WARREN W. SELLECK

*v.*

POLLY SELLECK *et al.*

*Filed at Ottawa June 16, 1883—Rehearing denied September Term, 1883.*

1. GIFT—*whether transaction is a contract or gift.* Where bonds are delivered by one person to another under an express promise, made in writing, by the latter, to return the same "whenever called for," the promise is a written contract, the terms and conditions of which can not lawfully be varied or modified by parol proof, and such undertaking is entirely incompatible with the idea of an absolute gift.

2. SAME—*retaining right to demand thing delivered, shows no present gift.* Where a party delivers bonds to another under a written acknowledgment, from which it is evident the party making the delivery intends to retain his right to call for them if circumstances should make that course desirable, the transaction can not be regarded as an absolute gift, even though he never expected to call for them. In such case it matters not what may have been his motives for such action.

3. SAME—*burden of proof to show a loan was converted into a gift.* Where a loan is made, the burden of proof rests upon the borrower to show that what was at first a loan was afterwards changed into an absolute gift, if he claims a gift.

4. ACTION—*when prior demand necessary.* If bonds are delivered by one person to another under a written contract to return the same "whenever called for," no duty to return the bonds or their proceeds will arise until an actual demand for the same is made, and no right of action will accrue to the lender until after such demand is made, and the Statute of Limitations will not commence to run until the cause of action accrues.

5. INSTRUCTION—*not based on evidence, properly refused.* Where there is no evidence tending to establish the fact of an advancement, instructions or propositions of law relating to the subject of advancements will be properly refused.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. FRANCIS GOODSPEED, Judge, presiding.

On December 23, 1869, Mrs. Eliza Wood, then a resident of Illinois, while in Connecticut, on a visit to her brother, the plaintiff in error, delivered to him three bonds of Cook county, Illinois, for $1000 each, and took from him a writing, as follows:

"BRIDGEPORT, *December 23, 1869.*

"Received of Mrs. Eliza N. Wood, three ($3000) thousand dollars in Cook county bonds, the interest to be used by me while in my possession, to be delivered to her whenever called for.                    WARREN W. SELLECK."

On November 30, 1870, Mrs. Wood, being in Illinois, wrote a letter, addressed to her "brother and sister," (meaning plaintiff in error and his wife,) saying that she "was disappointed at not finding a letter from you. You have not written whether the proposition I made was agreeable to you. * * * I might not have been very explicit. I thought if you could get time on the payment, at six per cent, you would gain $30 a year by keeping the bonds, and more if you

had to sell them so much below par. I wish you to write just how you both feel in the matter, for I would like you to do that which will be for the best for you." On December 18, 1870, Mrs. Selleck, the wife of plaintiff in error, wrote to Mrs. Wood a letter, in which she said, among other things: "You ask for my opinion in regard to the use of your bonds. * * * I am grateful to you for your assistance, and wish you to be entirely at ease in regard to security. I had told Mr. Selleck that if I paid one-half for the place, and took a deed for one-half, that I would like to leave my half unincumbered. * * *. Mr. Selleck wants to own one-half, which is all right if he can secure you satisfactorily on his half. * * * He says after he gets all fixed up * * * some change will come and upset us, and the result will be, foreclosed sale to pay you and your heirs. * . * * The house will be insured for $4000, and if it is burnt up you will be safe with half that amount, and one-half the lot," etc. To this letter Mrs. Wood replied, under date of December 23, 1870, saying, among other things: "I am afraid, dear sister, you misunderstood my feelings in regard to the bonds I left there last winter. I expected you would use them in a way most to your benefit. I never heard how matters stood in the payment of the house you have taken. When I asked security, it was more for your benefit than mine,—provided unforeseen misfortune overtook you. I never expect, nor do I want, any benefit from them, unless I should lose all I have the care of now. How, then, could any one suppose I would * * * foreclose, and force you to leave? * * * I am * . * * desirous that you retain possession of all that is yours, nor have I ever thought of your doing otherwise. Perhaps I did not explain as fully as I might my meaning in regard to sacrificing on the bonds, but if it will be better for you to do so, I have nothing to say against it."

Mr. Selleck used one of these bonds in payment for work and materials in finishing a house, and sold the other two

bonds, and applied the proceeds to his own use, and nothing further seems to have been done or said between him and Mrs. Wood during her life. Mrs. Wood died in Illinois, September 1, 1878, intestate, and the administrator of her estate, after adjusting the same, reported the sum of about $5000 in his hands for distribution to her heirs. Her sole heirs were W. W. Selleck, (the plaintiff in error,) Polly Selleck, and Mrs. Sarah Chatfield, being her brother and two sisters.

At this stage of affairs, the sisters (defendants in error) come into the probate court as petitioners, calling attention of the court to the above bond transaction, and ask that the plaintiff in error be held a debtor to the estate to the amount of these bonds, or in some other way charged with that amount, as a set-off in the distribution. Plaintiff in error, answering, claims he holds the proceeds of the bonds as a gift, and should not be charged therewith in the distribution. On this issue proofs were heard, and the probate court decided in favor of the petitioners, and rendered a judgment finding that plaintiff in error was justly indebted to the estate in a sum exceeding his proportionate share thereof, and directing the administrator to pay the net amount of the moneys in his hands to the defendants in error, in equal parts. Plaintiff in error appealed to the circuit court, and there the cause was tried *de novo*, and the judgment of the county court was affirmed. This judgment was affirmed in the Appellate Court, and plaintiff in error brings the record here for review.

Messrs. HILL & DIBELL, for the plaintiff in error, contended, from the evidence, there was no advancement, but that the transaction was in fact a gift.

While parol evidence is not admissible to vary or contradict the terms of a written instrument, this rule does not apply where the original contract was verbal and entire,

and a part, only, was reduced to writing; nor does it exclude evidence of the circumstances surrounding the parties. 1 Greenleaf on Evidence, sec. 284 a.

The subsequent statements and declarations of the deceased, both oral and written, made against her own interest, are competent evidence against the petitioners. *Wheeler* v. *Wheeler,* 47 Vt. 637; *Inot* v. *Finch,* 1 Taunt. 139; 2 Sanders on Pleading and Evidence, 557; 1 Greenleaf on Evidence, sec. 189.

Where money is payable on call, request or demand, and in all cases where *indebitatus assumpsit* will lie, no demand is necessary before bringing suit, and the Statute of Limitations will run from the time the suit might have been brought. Angell on Limitations, sec. 95; 2 'Parsons on Contracts, (4th ed.) 370, 371; *Hart's Appeal,* 32 Conn. 541; *Hayward* v. *Gunn,* 82 Ill. 385; *Cagwin* v. *Ball & Co.* 2 Bradw. 70.

A note payable on demand is always due, and the statute begins to run as soon as the note is made. So with a receipt for money borrowed, whereby the borrower agrees to pay "whenever called upon to do so;" and the statute begins to run whenever the creditor could bring his action, and not when he knew he could. 2 Parsons on Contracts, (4th ed.) 372; Angell on Limitations, sec. 95; *Cagwin* v. *Ball & Co.* 2 Bradw. 70.

The limitation laws in force when a cause of action accrues will govern and control in a suit upon such cause of action, except in cases arising under section 20. *Busby* v. *Spencer,* 25 Ill. 216; *Dickson* v. *Chicago, Burlington and Quincy R. R. Co.* 77 id. 331; *Hyman* v. *Bayne,* 83 id. 256.

Mr. G. D. A. Parks, for the defendants in error:

The instrument given by plaintiff in error was really an agreement. It was a receipt only in the sense that a promissory note which says "for value received," is a receipt, and can not be contradicted or varied by parol evidence. 1 Green-

leaf on Evidence, sec. 305; *Ludeke* v. *Sutherland,* 87 Ill. 481; *Andrus* v. *Mann,* 92 id. 41; *Doty* v. *Wilson,* 47 N. Y. 583.

The continued possession of any evidence of indebtedness is *prima facie* or presumptive evidence that the holder does not intend to release the liability which it imports. 2 Parsons on Bills and Notes, 480; *Doty* v. *Wilson,* 47 N. Y. 583; *Keyes* v. *Fuller,* 9 Bradw. 528; *Jewett* v. *Cook,* 81 Ill. 260.

This transaction answers the tests of a *commodatum* or gratuitous loan in the classification of bailments. (Story on Bailments, secs. 225, 227, 231, 257, 261.) In such cases a demand is necessary before suit will lie. Ibid. secs. 257, 107, 120, 258; 2 Parsons on Contracts, 182; *Gilbert* v. *Iron Manf. Co.* 11 Wend. 626.

A *commodatum* loan is, *ipso facto,* revoked by the death of either party, (Story on Bailments, sec. 277,) hence the Statute of Limitations did not commence to run until after the death of Mrs. Wood.

Mr. Justice Dickey delivered the opinion of the Court:

It is exceedingly clear that when the bonds were first delivered it was not as an absolute gift. The express promise, made in writing by plaintiff in error, to deliver the bonds to Mrs. Wood "whenever called for," is a written contract, the terms and conditions of which can not be lawfully varied or modified by parol proof, and that undertaking is entirely incompatible with the idea of an absolute gift. It may be that it was then her intention and expectation that the bonds never should be called for by her, but it is equally plain that she intended to retain her right to call for them if circumstances should make that course desirable to her. It is not material what may have been her motives for this action. It may be she intended all this practically as an advancement, or as a gift, but she did not choose to give it that form, or make it, either. It may be she took this course merely for the purpose of protecting the bonds and their proceeds from

creditors of her brother, and of preserving the same for his enjoyment. This does not affect the question, unless she chose to make the same an absolute gift or an advancement. The burden of proof rests upon the plaintiff in error to show that what was at first a loan was afterwards changed into an absolute gift. While there are some proofs tending to support that conclusion, there is also proof tending strongly to the conclusion that she never did relinquish, or intend to relinquish, her right to demand these bonds, or the proceeds thereof. This is an issue of fact which it is not our province to determine. We must treat the case upon the hypothesis that the loan, in fact, was never converted into an absolute gift. But if it were our province to weigh the evidence, the proofs fail to convince us that either these bonds or their proceeds were ever donated to plaintiff in error as an absolute gift.

But it is contended that the liability of plaintiff in error, if any, after their conversion to his own use, accrued in 1871, when the bonds were disposed of by him, with her consent, and no longer rested upon a written contract, and hence the right to sue for the same was barred by the Statute of Limitations; and the case is likened to that of a promissory note payable upon demand, against which it is said the statute begins to run at or soon after its date, and this without any actual demand. The cases are not alike. It was clearly, in this case, the agreement of the parties that no duty to return the money or the bonds should arise until an actual demand for the same should be made. Under the original contract no action could have been maintained by Mrs. Wood for these bonds without an actual demand; and the proofs tend to show, and we think do show, that the money for the bonds was not payable until actually demanded. The permission by Mrs. Wood to plaintiff in error to retain this money continued until the time of her death, and the lapse of time since her death had not been sufficient to bar the claim.

The propositions of law refused by the circuit court, relating to the subject of advancements, had no application to the case, for no evidence in the case tended to establish the case of an advancement.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*