WESLEY D. JONES, Administrator of the Estate of MARGARET FALLS, Respondent, v. JOHN FALLS, Appellant.

St. Louis Court of Appeals, March 31, 1903.

1. **Gift Inter Vivos:** INTENTION OF PARTIES: EVIDENCE HELD NOT SUFFICIENT. In an action by an administrator to recover a certain sum of money from the son of the deceased, claimed by him as a gift from his mother, the evidence showed that she had mortgaged her farm to obtain the money and stated that if he lost it in business, she would not let him have any more, and that she did not want him to go into business, and that she let him have or gave him the money to go into business because he wanted it.   The son paid his mother the interest on the money he

got until her death. *Held,* that the evidence was not sufficiently conclusive to prove that she intended to give him the money absolutely or that the same was delivered to him with that irrevocable purpose.

2. ———: EVIDENCE, COGENCY OF REQUIRED. The general rule requiring gifts *inter vivos* to be established by conclusive evidence is especially applicable where the gift is not asserted until after the donor's death.

3. ———: BURDEN OF PROOF. The burden of proof is on the party seeking to establish the gift.

4. ———: INSTRUCTIONS REFUSED, NOT ERROR. Instructions that, if the evidence showed that at the time of giving the money decedent stated she had given it to her son, judgment must be in his favor; and that, if she stated to her son, in the presence of a witness, that she would give it to him, and afterwards delivered it, then judgment must be for her son; and that, if decedent informed a witness on the day the money was delivered that she had given it to him, and that, if he lost it, she would never give him any more, then the court was warranted in finding a gift, were properly refused as mere commentaries upon isolated parts of the testimony.

5. ———: EVIDENCE INCOMPETENT TO PROVE A GIFT. Evidence that the deceased had stated to some of her friends that she intended to leave her property or the most of it to her son at her death, was incompetent and properly excluded.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Crites & Garrison* for appellant.

(1) "That which is originally intended as a gratuity can not be turned into a charge." Whaley v. Peck, 49 Mo. 80; Folger v. Heidel, 60 Mo. 284. (2) The desire of Margaret Falls in giving this money to her son, should be carried out by the courts, if consistent with the established rules of law. "Courts are ever desirous of carrying out and effectuating the intention of the parties as manifested by their agreements, or declarations of trust and will do so whenever it can be

done consistently with the established rules of law.'' In re Soulard's Estate, 141 Mo. 656. (3) The gift was valid, all requirements having been complied with. "To constitute a valid gift *inter vivos,* there must be an intention to give, and a delivery to the donee, or to some one for him, of the property given. An intention of the donor to give is not alone sufficient; the intention must be executed, by a complete and unconditional delivery. Neither will a delivery be sufficient unless made with an intention to give. The transaction must show a complete executed transfer to the donee of the present right of property and the possession. The donee must become the owner of the property, given.'' In re Soulard's Estate, 141 Mo. 656; Dunn v. Bank, 109 Mo. 97; McCord v. McCord, 77 Mo. 166. (4) This instruction presented the only theory on which the case could be determined by the court, i. e., whether or not the $600, admittedly received by the defendant from Margaret Falls, was in truth and in fact a gift. That was the sole issue in the case. If it was a gift plaintiff could not recover, it is was not a gift, plaintiff should recover. Meyer v. Koehring, 129 Mo. 15.

*Thos. M. & Cyrus H. Jones* for respondent.

(1) The court was sitting as a jury; it heard all the testimony, weighed it and found the issues, and its finding has all the weight of a verdict of a petit jury and is incontrovertible in this court. Warren & Son v. Maloney, 39 Mo. App. 297; Swayze v. Bride, 34 Mo. App. 416. (2) The appellant is relying upon a gift *inter vivos.* The testimony of the witness sought to be elicited would not have tended to establish such a gift, because it is essential to such gift that it go into effect at once and completely. Spencer v. Vance, 57 Mo. 427; Sneed v. Dorsey, 10 Am. Rep. 118; Vogel v. Gast, 20 Mo. App. 104.

REYBURN, J.—This record discloses that several years prior to the 29th day of September, 1901, Margaret Falls, plaintiff's intestate, had resided at Rolla, Missouri, with her only son, John Falls, appellant herein, occupying as their home a house the property of the son, and on the 29th day of September, 1901, Margaret Falls died leaving as her heirs at law appellant and four daughters. At the time of her decease, Margaret Falls had $306 cash in her possession, which was delivered by the sisters of appellant to him and deposited by him in bank in his own name, and from which he afterwards paid the expenses of the funeral and last illness of his mother, aggregating $204.55.

Prior to December, 1897, appellant and C. P. Reinoehl proposed to buy a stock of goods then offered for sale in Rolla, and appellant finding he required $600 to provide sufficient money to pay his share, in company with Reinoehl, went to deceased and asked her for the money. With some reluctance and after some hesitation on her part, she agreed to let him have it; but not having the amount at hand, appellant, through J. J. Crites, procured a loan of $600 on a farm belonging to his mother, upon which she executed a deed of trust securing her note for that amount, of date December 6, 1897. After thus obtaining the money, deceased turned it over to appellant without taking from him any acknowledgment of its receipt, or any obligation of any character for its return or repayment to her. Appellant invested the money in his business and paid interest on the loan during the lifetime of his mother but after her death, upon default in payment of the mortgage indebtedness under the provisions of the deed of trust, the realty was sold and bought in by appellant.

The petition is in two counts, the first reciting that defendant, not having any property of his own to pledge as security for money; importuned deceased to borrow for him $600, and on the 6th day of December,

1897, deceased borrowed for defendant at his instance and request, such sum, executing her promissory note therefor, and securing payment thereof by a deed of trust on the property described; that defendant received said sum from deceased and agreed to pay same to her, or to pay off and discharge said note and deed of trust given by her for said sum of money, but defendant had failed and refused to pay off said note and have such deed of trust satisfied of record, and had failed and refused to pay deceased in her lifetime, and had permitted the deed of trust to said real estate to be foreclosed, and had failed and refused to pay plaintiff as her administrator said sum.

In the second count plaintiff averred that prior to the death of his mother, defendant had received from her sundry sums of money, collectively $350, to be deposited to her account in the bank, which defendant had converted to his own use, and had refused to account to plaintiff for such sums or pay same to him.

The answer of defendant admitted the administration, and that deceased had borrowed for him the sum alleged, to be used by him in his business, and had pledged her real estate for its payment, and further, that on the 6th of December, 1897, he was engaged in business in the city of Rolla and needed said sum of $600 in his business; that the deceased, his mother, was desirous of assisting him in his business, and suggested to him that, being the owner of the real estate described in plaintiff's petition, she would borrow the money for him, pledging such real estate for the payment thereof, and that she would give to defendant for use in his business, said sum of $600 so procured from such loan and informed him he need not repay the same, that she made him a present of same on account of the kind treatment and support she had received from him during the past; that thereupon she borrowed said sum, executed and delivered her promissory note for the sum of $600, and a deed of trust upon such real estate to

secure its payment; that his mother delivered to him as a gift such sum of $600, and that it was so intended and understood by her and defendant at the time.

In answer to the second count, defendant denied he had converted any money belonging to the estate of his mother to his own use, but that a short time before the death of his mother, during her last illness, his sisters who were in attendance upon her, delivered to him for safe-keeping, $306 of the deceased, and at their request and suggestion he had placed it in bank, and after the death of his mother, he had paid therefrom the funeral expenses, physicians and nurses $204.55, and to a sister the sum of $21.24, leaving a balance in his hands of $80.21 belonging to the estate of his mother, which he then tendered into court and offered to allow judgment to go against him in said sum; that the amount of $44.85 in cash on hand at the residence of his mother at the time of her death was divided equally by her heirs at law and was never in his possession.

The reply was a general denial, and an averment that defendant was to pay off and discharge the mortgage indebtedness, and have the deed of trust satisfied of record, which he had failed to do, permitting the note to mature and the land mortgaged to be sold in satisfaction.

At the close of the case, defendant asked the following instructions:

"1. The court declares the law to be that if it believes and finds from the evidence that Margaret Falls, now deceased, on the 6th day of December, 1897, delivered to the defendant, John Falls, as a gift, the sum of $600 described in plaintiff's petition and defendant's answer, the plaintiff can not recover in this action and the finding and judgment of the court will be for the defendant.

"2. The court declares the law to be that a gift is a transfer of personal property made voluntarily and without consideration, and in this case if the evidence

shows that the said Margaret Falls, after or at the time she gave the defendant the $600 charged in plaintiff's petition and admitted in defendant's answer, stated that she had given the defendant said $600, the judgment of the court will be for the defendant.

"3.   If the court believes from the evidence that Margaret Falls stated to the defendant in the presence of witness Reinoehl that she would give him, the defendant, John Falls, the $600 in question, and afterwards delivered and gave to the said defendant the sum of $600, then in law it was a voluntary transfer of the said personal property, without consideration, and the finding and judgment of this court will be for the defendant.

"4.   If the court believes from the testimony of witness Crites, that the said Margaret Falls, on the day said $600 was delivered to the defendant, John Falls, informed said witness that she had given the defendant the $600 in question, and if he lost it she would never give him any more money, then in that case the court is warranted in finding that it was a voluntary transfer of said money from the said Margaret Falls to the said defendant, a gift within the meaning of the law, and the judgment and finding of the court will be for the defendant.

"5.   The court declares that the evidence offered preponderates in the defendant's favor, and the finding of the court will be for the defendant.

"6.   The court declares that there is no evidence offered in this case on the part of the plaintiff, contradicting or disapproving the statements shown in evidence by the defendant."

All of which the court refused and gave the following:

"The court declares the law to be that if at the time deceased, Margaret Falls, agreed to deliver, or at the time she did deliver money in question to John

Falls, she intended that he should keep the same as his own and that she would thereafter have no claim or demand against him for the recovery of the same, then it was an absolute gift and the plaintiff can not recover the same in this action.''

The court then, of its own motion, gave to the plaintiff the following declaration of law:

''The court declares the law to be that in order to establish a gift, the evidence must show a delivery of possession of the money with the intent to relinquish any claim or dominion thereafter over it, and the court finds from the testimony in this case that the deceased did not intend to relinquish any claim or dominion over the money.''

The court found for plaintiff on the first count for the sum of $603, and upon the second count for $81.24. Appellant assigns as error, the finding for plaintiff on the evidence adduced, and that the judgment was against the preponderance of the evidence and should have been for defendant, insisting that the uncontroverted testimony clearly and unmistakably establishes that Margaret Falls, at the time of giving plaintiff the sum of money, intended to relinquish all claim thereto with the purpose that he should have it as a gift, and that he had accepted it as a gift, thus concluding the transaction. The law is well settled that a gift when consummated in the proper manner is effective and conclusive between the parties thereto. Meyer v. Koehring, 129 Mo. 15. In the language of a well-considered case in the Supreme Court of this State: ''To constitute a valid gift *inter vivos,* there must be an intention to give and a delivery to the donee, or to some one for him, of the property given. An intention of the donor to give is not alone sufficient. The intention must be executed by a complete and unconditional delivery. Neither will a delivery be sufficient unless made with an intention to give. The transaction must show a fully executed transfer to the donee of the present right of

property and the possession. The donee must become the owner of the property given." In re Estate of Soulard, 141 Mo. 642. But such transaction must be established by clear and convincing testimony, and the burden of proof is upon the party claiming the benefit and asserting title to the property. Wheeler v. Glasgow, 97 Ala. 700; Selleck v. Selleck, 107 Ill. 389; Teegarden v. Lewis, 35 N. E. 24; Sampson v. Sampson, 67 Ia. 253; Collins v. Lofftus, 10 Leigh (Va.) 5; s. c., 34 Amer. Dec. 719. Tested by the application of the foregoing well-established rules, the testimony introduced by appellant, consisting wholly of oral proof, is far from satisfying the requirements of the law to establish a gift *inter vivos,* being essentially as follows:

Amelia B. Seers, a resident of Rolla, stated she was a particular friend of Margaret Falls during her lifetime and had known her for over twenty-five years, was frequently at her house, spending many evenings with her, and the deceased had frequently talked over her business affairs with her; that the latter had always expressed herself as wanting the defendant to have everything that she left; that she was with her one day when she put $855 in the National Bank at Rolla, assigning as a reason that she drew that out of the store because she did not like Mr. Reinoehl and wanted to get the money out. That she remembered the deceased let the defendant have some money to put into the store, but she could not say how much. That the deceased did not say any more than that defendant wanted it in his business, and she wanted to let him have it, and said she gave a deed of trust on her farm, but she did not say that she wanted to give him the money, she said she gave it to him to help him in his business, that he needed it and in response to a question by the court whether the deceased said at any time it was a gift or a loan, this witness replied, "She did not say which it was to me. She said she would let him have it to use in his business, she said that he needed it."

Amos Seers, testified that he was frequently at the house of deceased during the last twenty or twenty-five years and she talked over what disposition she was going to make of her property, but he could hardly tell about what she had said, and could not remember very well and forgot things, but she gave him to understand that there was a part of her children that would not get anything at all, and that defendant and one girl he thought there was, that she calculated would get what she had; that he remembered something about the deceased letting the defendant have the money at the time defendant started in the store, that deceased said she had let him have $600, but he did not remember whether she said $600 or whether she said that she let him have the money to go into business with. In reply to the direct question whether or not that was a loan, or whether that was a gift to him, he replied that he did not think that she stated that, but she said she let him have the money to go into business with; it was her money that was in the store.

C. P. Reinoehl testified to his acquaintance with defendant for thirteen years, and that he engaged in business with him in December, 1897; that there was a stock of goods that defendant and himself wanted to buy, and they lacked $600 of having enough money to pay for it, and made different efforts to get the money unsuccessfully, and defendant and witness went to his mother's and tried to get the money and talked for an hour or an hour and a half, and at first she did not want to let defendant have the money, said she would not, as she was afraid he would make a failure in business and she did not want defendant and witness to go into business together, and finally said for defendant to go ahead and she would let him have the money, that that was about the substance of it. In reply to the express question, whether she said she would loan the money or give it to him, he said that she said she would give it

to him, for him to go ahead and buy the stock of goods
and she would give him the money and thereupon they
closed up the trade; that he did not know how she got
the money but he knew defendant got $600. In reply
to the question whether he understood that she was
making the defendant a gift of the money at the time,
he said he did not know anything about that, she said
for him to go ahead and she would give him the money.

J. J. Crites testified that about the 4th, 5th or 6th
of December, 1897, Reinoehl came to him and inquired
if he could raise $600 for him. Witness learned the
nature of the security, and said that he thought he could,
and prepared a deed of trust for $600 and took defend-
ant to the bank, gave him the check and witness, who
lived near deceased, met her that night when he went
home and asked him what he thought about it and he
replied he did not know anything about it, and she said,
"I am opposed to John going into business with Mr.
Reinoehl as I am afraid he will beat him out of money.
I have given him that $600 and if he loses that, I will not
give him any more."

Defendant in his own behalf, stated that before the
death of his mother, there was placed in his charge
$306 by his sisters, and he detailed the items of the
funeral expenses paid by him therefrom, aggregating
the amount claimed in his answer, and admitted that
the realty securing the sum of $600 had been foreclosed
and that he had bought it, and that he had paid interest
on this loan from his own funds up to a year before the
trial which was had September 19, 1902.

A granddaughter testified that the deceased lived
with defendant during her lifetime and at the time of
her death, and that her aunts lived there until they were
married. That the defendant was unmarried at the
time of the death of his mother.

On behalf of plaintiff, a sister of defendant testified
that she had had conversations with her mother about
the loan on the real estate, and that her mother said that

it was mortgaged for a year, and witness talked with her a short time before she died, and she told her sister and herself that it was mortgaged for a year and she did not know whether it was paid or not, and she said the defendant had paid the interest, she did not know whether he had paid the principal or not; that this was last April; that in a recent conversation with defendant she had said, ''You don't deny getting the money, do you,'' and he replied, ''Certainly,'' and she said, ''Why don't you go and pay off the farm,'' and he said, ''I consider that I am entitled to the money and I have got it in my hands and am going to keep it.''

The defendant recalled identified a letter addressed to one of his sisters, which was introduced in evidence over the objection of defendant, and he further stated that the conversation just detailed by his sister, consisted of a question by her what he was going to do with the money, and that he had replied that his mother gave him that money and he was not going to pay it back. That the letter was written after his mother died, which letter is as follows:

''Rolla, Missouri, January 13, 1901.
''Sister Sarah:
''No doubt you and my other sisters have had a wrong impression as to the final outcome or ending of your present cause. You must now replace in the bank the money you have secured of mother's and then, of course, you know or ought to know that the chances are against you ever getting anything, as costs, etc., will take it all. To protect myself, of course, I will probate an account against the estate for several years labor on the farm, for taxes I have paid for mother, for maintenance, care, etc., amounting to at least $1,800. You forget, I guess, that I worked for years on the farm many times renting land from others and never getting any more for it than you did.
''You ought to know no court or jury will refuse

or can refuse me some and liberal pay for this and for taxes. I have receipts for at least fifteen years—interest of course will have to be allowed; you can imagine about how it will figure.

"You ought to know that I am acting under the best of advice and very nearly know what I am doing— it may not yet be too late to save a part if you act promptly.

"I have written this letter to each one."

He further stated that the letter was written soon after he was notified he would have to replace a part of the money, and that he wrote them thinking perhaps they had not been notified of that fact. That his sister had put this in the hands of the administrator and after the suit was brought, he told them they would have to put back the money to be administered upon, being $171 received by each.

The general rule requiring gifts *inter vivos* to be established by conclusive evidence, is especially applicable where such gift is not asserted until after the death of the alleged donor, and gifts thus preferred after death of the alleged donor, are regarded with suspicion by the court. In the matter of Manhardt, 18 N. Y. App. Div. 1; s. c., 44 N. Y. Supp. 836.

In our judgment the testimony herein falls far below that degree of proof required to establish that in the transaction, it was the deliberate purpose of the deceased to give appellant the sum of money borrowed by her upon her real estate for his benefit, or that he on his part understood it to be a gift. He confessedly paid the interest accruing until about the death of his mother, and it is not disputed that the claim that it was not a loan but an outright gift was not advanced until after her decease. The parol evidence relied on is obscure, not cogent; and such dealings between a son and his aged mother should be carefully scanned.

2. Appellant further complains of the action of

the court in refusing the declarations of law submitted on his behalf, but the court committed no error in such ruling. So far as the first instruction was proper, in substance it was embraced in the instruction given by the court and the second, third and fourth instructions are mere commentaries upon isolated parts of the testimony and were properly refused. The fifth and sixth declarations are in effect peremptory declarations in favor of defendant and in the view we have taken, above stated, they were also properly refused.

3. The trial court is charged with error in admitting the letter of defendant to his sister and in excluding questions seeking to elicit statements of deceased to the effect that she wanted everything she had to go to the defendant. The latter was clearly competent as tending to prove that at that time, after the death of his mother but prior to this action, he did not assert the sum involved had been given to him by his mother as a gift; that he then, in lieu of preferring such claims thereto in the letters to his sisters, threatened to present a claim against the estate of his mother for services, taxes paid, maintenance and care, to the amount of $1,800 at least.

The testimony sought to be drawn out regarding the wishes and intentions of the deceased as to the disposition of her property, was not competent upon the issue here presented, which was, whether the transaction in controversy was an outright gift, while such evidence could have only tended to establish a purpose on the part of the deceased of giving to her son her estate at her death, which could only be carried out by proper testamentary disposition. The judgment will accordingly be affirmed. *Bland, P. J.,* and *Goode, J.,* concur, the latter in the result.