WOOTON & WOOTON, Respondents, *vs.* HINKLE, Appellant.

1. Partition sale set aside, where it appeared that the bidders, for the purpose of obtaining the property at a sacrifice, agreed that one should become the purchaser, and the others refrain from bidding, in consideration of sharing the benefits of the purchase.

*Appeal from Lafayette Circuit Court.*

This was a proceeding to set aside a partition sale of certain real estate, of which Hinkle became the purchaser. The cause was submitted to the court without a jury, and the following facts were found:

Before the sale, Samuel B. Shannon, John S. Shannon and Captain Trigg agreed among themselves to purchase the land at the sale, provided it did not sell for more than twelve dollars per acre, and authorized S. B. Shannon to attend the sale, and bid that price for the land. In pursuance of· this agreement, S. B. Shannon attended the sale, and when the land was put up by the sheriff, bid the first time three dollars per acre. There were between thirty and fifty persons present at the sale. Hinkle was not present at first, but afterwards came up, and after making some inquiries, commenced bidding for the land. Several bids were made by Hinkle and S. B. Shannon respectively. Shannon having made the last bid, Hinkle took him aside, and it was then agreed between them that Hinkle should bid off the land, and the same should be equally divided between them. They then returned to the place of sale; Hinkle made a bid over Shannon's last bid, and Shannon, in pursuance of the agreement, refrained from bidding any more. The land was knocked off to Hinkle at six dollars and fifty cents an acre, or about one half its value. There were no other bid-

ders present at the sale. The court further found that the agreement between Hinkle and Shannon was made for the purpose of preventing competition between them. Upon these facts, the court declared the law to be that the agreement between Hinkle and Shannon was a fraud upon the owners, and accordingly set aside the sale.

Hinkle, the purchaser, filed a motion for a review of the facts and law, which was overruled, and he appealed to this court.

*Hayden, Napton* and *Morrow,* for appellant, cited *Phippen* v. *Stickney,* 3 Metcalf, 384. *Small* v. *Jones,* 1 Watts & Serg. 136. 2 Const. Rep. (S. C.) 821. 3 Gilmer, 529. 11 Paige, 431. 2 Kent's Comm. (7th ed.) 700.

*J. R. Troxell,* for respondents, cited 1 Story's Eq. Juris. p. 310, §293 and authorities there cited. (*Blight's Heirs* v. *Tobin,* 7 Monroe, 612. *Mills* v. *Rogers,* 2 Littell's (Ky.) Rep. 217.)

SCOTT, Judge, delivered the opinion of the court.

There was a motion made for a review of the facts found, but as, in our opinion, the evidence warranted the finding of the court, we shall proceed to examine the questions of law arising upon the record as presented.

At one time, the law in England seemed to be settled that the employment of puffers at auctions was illegal. (*Bexwell* v. *Christie,* Cowp. 395.) Afterwards, acts of parliament imposing a duty on sales of estates at auction, created a different opinion, and seem to have sanctioned the practice. (Sug. on Vend. 24. 1 Fonb. 178.)

In America, where the subject has not been controlled by legislation, the opinion is generally entertained that it is against sound policy and fair dealing to employ a person to bid secretly for the owner against a *bona fide* bidder at a public auction. (2 Kent, 539.)

According to Cicero, a vendor ought not to appoint a puffer to raise the price, nor ought a purchaser to appoint a person

to depreciate the value of an estate intended to be sold. And Huber lays it down that, if a vendor employs a puffer, he shall be compelled to sell the estate to the highest *bona fide* bidder, because it is against the faith of the agreement, by which it is stipulated that the highest bidder shall be the buyer. (Sug. 23.)

Our laws would justly be chargeable with the censure of neglecting the interests of vendors, if, while they prohibited them from employing puffers at auctions of their estates, they suffered purchasers, by unjust combinations among themselves, to obtain their property at a sacrifice. But our law is not obnoxious to this censure. While, on the one hand, it protects purchasers from the influence of fictitious biddings and false appearances produced by the conduct of puffers; on the other, it equally protects the rights of the vendor, and will not permit purchasers, by illegal combinations and arrangements among themselves, to obtain his estate at an under price.

Story, in his equity jurisprudence, states the law to be that agreements, whereby parties engage not to bid against each other at a public auction, especially in cases where such auctions are required by law, are held void; for they are unconscientious and against public policy, and have a tendency injuriously to affect the character and value of sales at public auction, and to mislead private confidence. They operate virtually as a fraud upon the sale. (1 vol. sec. 293.)

The courts in New York maintain that the forbearance of bidding at a public auction is a consideration for a contract that ought not to be sanctioned in law; that the law, at judicial sales, is anxious to produce a fair competition among bidders, and, as combinations have the effect of preventing such competition, they are against the policy of the law and void. (*Jones* v. *Caswell*, 3 John. cases, 29. *Dootin* v. *Ward*, 6 Johns. Rep. 194.)

None of the cases cited by the appellants impugn this doctrine. The case of *Loomis* v. *The National Fire Ins. Co.*, (11 Paige, 431,) decides that a real bidder, at a public sale, may either bid in person or by his agent duly authorized. The

case of *Phippen* v. *Stickney*, (3 Met. 384,) was an action arising out of an agreement between two persons that one of them should purchase the land to be sold at auction and convey it to the other, the purchaser participating in some of the advantages. In this case, the court says, the extent to which the doctrine of invalidating such contracts can safely be carried, would rather seem to embrace within the rule all cases of fraudulent acts and all combinations having for their object to stifle fair competition at the biddings, with the design of becoming the purchasers at a price less than the fair value of the property. The case of *Small* v. *Jones*, (1 Watts & Serg. 128,) contains nothing contravening that just above cited; it maintains that a combination of interests to purchase property at a sheriff's sale will be valid or not, according to the views with which it is made. If it is effected with the design to depress the price, it will be void. But that there may be circumstances which will render a combination at a sale lawful, when it is entered into with no improper view. The case of *Switzer* v. *Skiles*, (3 Gilman, 529,) contains nothing inconsistent with the doctrine of the above cases. That was a sale of the public lands of the United States. A town had previously been laid out upon the land, and the owners of lots deputed one of their number to bid for the tract on which their town had been built. Nothing more appears.

The case of *Jenkins* v. *Hogg*, (2 Con. S. Car. Rep. 821,) does not affect the question involved in this controversy. If it is cited for the purpose of showing that the employment of puffers at auctions is warranted by law, its authority would scarcely be recognized at this day. The facts in this case show that there was a combination to obtain the property sold at a sacrifice by those who purchased it. When arrangements are made to effect that object by the purchasers at a sale, the law deems them fraudulent. It is a fraud on the sale, to make a combination by which the property is acquired at a price below its value. The law imputes fraud to such conduct, and the court was warranted in inferring its existence from the facts

found. It is of importance that these sales in partition should be preserved free from all influences, which may depreciate the value of the land sold. Such sales rarely take place but where infants are interested, and they are too frequently prompted by a desire to obtain their inheritance, and that, too, at a sacrifice. Under such circumstances, courts cannot be too vigilant in guarding every avenue to improper practices in conducting them.

Judge Ryland concurring, the judgment will be affirmed.