## ELIZA WILEY et al. v. DOROTHY A. HARLOW, Appellant.

#### Division Two, April 9, 1918.

1. **LAW CASE: Tried by Court: Appellate Rule.** An action to quiet title, coupled with a count in ejectment, wherein the issue is whether the plaintiffs are heirs at law of the common source of title, is a law case, and having been tried by the court sitting as a jury, the judgment must be upheld on appeal if there is any substantial evidence to support it.

2. **CHILDREN OF FORMER SLAVES: Marriage: Abandonment of First Spouse.** The statute (Sec. 344, R. S. 1909) requires that the offspring of former slaves, born while their parents were held in slavery, must have been born while the relation of man and wife existed. It connotes either a ceremonial marriage, or a common-law marriage, or the similitude in form of one or the other; but since a slave was incapable of making a contract, no penalties can be visited upon him or his offspring if, having gone through the form of marriage and begotten and had born issue thereof, he afterwards, during the life of the first *quasi*-wife, abandoned her and married another woman.

3. ——: ——: ——: **Good Faith.** The statute legitimized children of slaves who "were living together in good faith as man

170

and wife at the time of the birth of such children;" and under it, if the slave at different times in good faith lived with two spouses, and while so living with them children were born to him, such children after their emancipation were legitimate, and capable of inheriting from him. But he could not "in good faith" live with two women at the same time "as man and wife;" and if after a form of marriage with one spouse, he abandoned her and entered into a ceremonial marriage with another and they cohabited together as man and wife, and two years thereafter a child was born to the first spouse, such child is not legitimate, since he and she were not then "living together in good faith as man and wife," but such child was the result of illicit cohabitation.

Appeal from Pike Circuit Court.—*Hon. Edgar B. Wool-folk*, Judge.

REVERSED AND REMANDED.

*Pearson & Pearson* and *J. E. Thompson* for appellant.

Marriage between colored persons, who were slaves, were void, and their offspring illegitimate (Johnson v. Johnson, 45 Mo. 601), unless the parents, as slaves, were living together in good faith, as man and wife, at the time of the birth of such children. Sec. 344, R. S. 1909; Lee v. Lee, 161 Mo. 57. But, no man even though he was a slave, could live with two women at the same time, and be "in good faith" living with each as man and wife. Sec. 4720, R. S. 1909; Keen v. Keen, 184 Mo. 373.

*Hostetter & Haley* for respondents.

(1) No instructions were asked and none given by the trial court. The count to determine title involved no equitable issues, but was treated as a law count, and tried as such. Of course the ejectment count was one at law only. In such circumstances the finding of the trial court on all questions of fact is absolutely binding and conclusive on the reviewing appellate court. The latter tribunal has no concern with the weight of the evidence but is limited solely to the question as to whether

there was any evidence at all to support the conclusion reached by the trial court. Coulson v. LaPlant, 196 S. W. (Mo.) 1146; Lee v. Couran, 213 Mo. 404; Minor v. Burton, 228 Mo. 558; Hanson v. Murray, 256 Mo. 84; Minor v. Burton, 228 Mo. 564; Abeles v. Pillman, 261 Mo. 376; Slicer v. Owens, 241 Mo. 323. (2) Regardless of the merits of the very interesting question as to the validity of marriages between slaves, Sec. 344, R. S. 1909, a curative statute, which was first enacted in 1865, settles the question in respondent's favor. Lee v. Lee, 161 Mo. 52. All that is necessary under the statute is, that the slave parents should have been "living together in good faith as man and wife at the time of the birth of such children" in order to legitimatize the children for the purpose of inheritance. The trial court believed the evidence offered in support of this status; even if the appellate court could properly determine this issue on the weight of the evidence, it would be compelled to approve the action of the lower court, because the great weight of the evidence was with the respondents.

FARIS, J.—This is an action tried in the circuit court of Pike County, whereby it is sought to determine title to a certain tract of land situate in said county. The petition contains also a count in ejectment. Upon a trial below, judgment went for plaintiffs for an undivided one-ninth interest each in the premises in controversy. From this judgment, after the usual motion, defendant has appealed.

The agreed common source of title is William Smith, a negro, sometimes called William Yager, who was before the Civil War a slave. Plaintiffs, Eliza Wiley and Albro Smith, claim to be the children and only heirs of William Smith. The defendant is the grantee by mesne conveyances of certain other children whom defendant avers to be the only and all of the heirs of said Smith. According to the respective contentions of plaintiffs and defendant, said William Smith,

was, while he was a slave, twice married. In the statement of the case and in the discussion thereof, we shall use the word "married" to express the relations which subsisted between Smith and the two negro women, who play the chief parts in the facts of this case, though fully recognizing that the above word with regard to the sexual relations which subsisted prior to emancipation among male and female slaves is not a precisely accurate one.

According to the testimony adduced by plaintiffs, William Smith was owned by one Yager, who resided with his slaves on a farm in Pike County. Near the Yager farm, perhaps adjoining it on the south, resided a man by the name of John South, who owned numerous slaves, among others a negro woman called Adeline, and who, taking the name of her master, was known as Adeline South. According to the testimony of one Collins South, an old negro some seventy-five years of age, who was himself a slave, and who likewise belonged to John South, the negress Adeline was married about the year 1850, to said William Smith. There was a ceremony of marriage between the two, performed, according to the latter witness, by a negro preacher by the name of Enoch Jackson. From and after the marriage of Smith to the woman Adeline, these two lived together for some three years as man and wife in a cabin on the farm of John South, the master of the woman. From the relation thus established there were born to William Smith and Adeline, three children, of whom one is the plaintiff Eliza. The date of the birth of the plaintiff Eliza does not clearly appear (which obscurity likewise attaches to many of the facts testified to by the witness Collins South), but the witness is clear upon the point that Eliza was born either prior to or in the year 1853; for in the latter year John South removed with all his slaves, including the woman Adeline, and the child Eliza, to a point in Lincoln County some thirty miles away from his former home. According to the witness Collins South, Smith continued

to live with the woman Adeline after her master had taken her to Lincoln County, for this witness says that Smith came to see her every Saturday night, and spent Saturday night and Sunday with her, and that from this relation there was born to the woman Adeline, in 1855, the plaintiff Albro Smith. These relations of Smith with the woman Adeline continued, according to this witness, till a period at least subsequent to 1859. Adeline South lived until 1878, and was the mother of a number of children besides those here concerning us. The subsisting relations, after plaintiff Albro Smith became old enough to remember, are likewise corroborated in a way by him, but he states that his mother always impressed it upon him and the other children that they were not to mention the relations subsisting between her and Smith. So much in brief for the testimony upon which plaintiffs rely to make out their heirship to Smith.

On the part of defendants it is shown that their title emanates from Julia Gaines, Homer Smith, and others, the children of William Smith, by one Harriet Wheeler, and who claim to be the only heirs of said William Smith.

The testimony adduced by defendants conclusively (*in the sense that it is not disputed*) shows that in the year 1853 William Smith went through a ceremonial form of marriage with a negro slave woman who belonged to a man named Hedges, and who was called Harriet Wheeler. The fact of this marriage is, as stated, shown conclusively. The family record of William Smith, which was given by Smith to his daughter, who testified in the case and identified this record, shows that this last marriage of Smith to the negress Harriet occurred either on the 15th of January, or the 15th of June, 1853. The writing is blind, and the doubt is due to the difficulty of deciphering this date. Numerous witnesses also testify to the fact of this marriage of Smith and the woman Harriet. One of these, a son of Harriet's old master, swears that he was per-

sonally present at this marriage ceremony, and that it was performed by the preacher Enoch Jackson. Numerous witnesses testify that from and after Smith's marriage to Harriet, in 1853, these two continuously lived together as man and wife, according to the custom of slaves, until they were emancipated during the war, and that thereafter they continued to live together until Smith's death in 1904. From this relation between Smith and the woman Harriet, there were born nine children, two of whom died in infancy, and the others of whom, except two who died leaving heirs, and with whom we are not concerned here, were the mesne grantors of the defendant herein.

Upon a trial of the case below, without a jury, the court found, as stated, that plaintiffs were each entitled to an undivided one-ninth of the land in dispute, and that defendant was entitled to an undivided seven-ninths thereof.

Such further facts, as we may find it necessary to state, in order to make clear the view which we take of this case, will be found in our opinion.

I. This is a law case tried by the court sitting as a jury, without any declarations of law asked, given, or refused, upon either side. In such case it is settled law that the judgment of the trial court must be upheld upon appeal, if there is any substantial evidence to support it. [In re Lankford Estate, 272 Mo. 1; Woods v. Johnson, 264 Mo. l. c. 293; Hatton v. St. Louis, 264 Mo. 634.] The case is one which turns wholly upon the facts, for the law is settled by an express statute. This statute was passed in 1865, has been on the books ever since and reads as follows:

> "For the purposes of this article, the children of all parents who were slaves, and were living together in good faith as man and wife at the time of the birth of such children, shall be deemed and taken to be the legitimate children of such parents, and all the children of any one mother, who

*Law Case.*

*Marriages of Slaves.*

was a slave at the time of their birth, shall be deemed lawful brothers and sisters, for the purposes of this article." [Sec.. 344, R. S. 1909.]

The learned trial court found that plaintiffs are the children of the former slave William Smith, who is the agreed common source of title to the land in dispute. Measured by the above rule of verity, attaching to the finding of the court *nisi* in a law case, there is ample evidence to support so much of his finding. The vexing question is, were plaintiffs born while William Smith and Adeline South were "living together in good faith as man and wife?" If they were so living together, the plaintiffs are legitimized by the statute quoted, and the judgment below is correct. For the statute, supra, seems to be fairly plain. It requires that the offspring, of former slaves, born while their parents were held in slavery, must be born while the cohabitation as man and wife existed. It connotes either a ceremonial marriage, or a common-law marriage, or to be exact (since slaves were incapable of entering into a contract of marriage or of any sort) the *similitude in form* of one or the other. It must also be construed in such wise as to subserve its beneficent intention of remedying an unfortunate situation, so far as is consonant with good morals and dignity, and therefore so as to exclude the legitimation of offspring begotten by mere casual cohabitation. So construed, it will no more permit a slave to have two wives, or two husbands, at one and the same time, than it would allow such a privilege to the free man or woman. This view follows from the express statutory requirement that the cohabitation must be in "good faith." Since, however, the slave was incapable of making a contract (Lee v. Lee, 161 Mo. 52), no penalties were visited either upon the slave himself, or upon his offspring, if having gone through the form of either a ceremonial or a common-law marriage, and begotten and had born issue thereof, he should, during the life of the first *quasi*-spouse, abandon her and "marry" another woman.

If he lived at different times in good faith with **Good Faith.** each such spouse, and while so living children were born, such children would be legitimized by our statute. Upon these considerations how stands this case?

There was evidence sufficient to put in force the rule stated that the slave William Smith went through a form of ceremonial marriage with Adeline South, the mother of these plaintiffs, about the year 1850. Thereafter the negro Smith lived with plaintiffs' mother till 1853, at which time the master of the woman removed with her, the plaintiff Eliza, and his other slaves, to a point in Lincoln County, some thirty miles away from the master's former home. While cohabiting in Pike County with the woman Adeline, following the ceremonial marriage, and before the woman was taken away to Lincoln County, by her master, the plaintiff Eliza was born. In 1855, and two years at least (there is some considerable evidence that it was seven or eight years) after Adeline left Pike County, the plaintiff Albro was born.

The evidence is conclusive that either in January or June, 1853, William Smith went through a form of ceremonial marriage with a slave woman by the name of Harriet Wheeler, who belonged to one Hedges, and who is sometimes called Harriet Hedges. Likewise it is proved conclusively that Smith lived with this woman Harriet in good faith as her husband continuously till his death in 1904, and that there were born of Smith's cohabitation with the woman Harriet nine children. There is some testimony to the effect that Smith continued for some years after 1853 to sustain toward the woman Adeline a casual illicit sexual relation, and there is evidence from which the court might well have found, as it is patent he did find, that the plaintiff Albro, as well as the plaintiff Eliza, is the child of Smith. But we do not think there is any substantial proof that Smith, after 1853, ever *lived in good faith as man and wife* with the woman Adeline. Such a view is in diametri-

274 Sup.—12

cal opposition to, and inconsistent with both the law
and the facts, as the proof shows them and as the
learned court *nisi* was compelled to find these facts, in
order to render the judgment which he entered in this
case.    For plaintiffs sued for the whole fee upon the
theory and allegation that they are the sole and only
legal heirs of William Smith.   The trial court held that
they are entitled to but an undivided one-ninth interest
in the land; evidently upon the theory that the whole
of the living issue of both marriages are legitimized by
our statute.   This, in our opinion, cannot be true under
the facts and the statute.    Either Smith was, when
plaintiff Albro was born, living in good faith as man
and wife with the mother of Albro, or he was living in
good faith with Harriet Wheeler, whom he had married
two years before Albro's birth.   A cloud of witnesses,
both white and black, testify to the truth of the latter
fact, and the family record shows it conclusively; nor
is it in fact denied by any witness for the plaintiffs.  There
is, as stated, some evidence of subsequent sexual rela-
tions between Smith and the woman Adeline; but in
some of the testimony as to these subsequent relations
the sinister fact crops out that they were attended by
circumstances evidencing their clandestine character.
These relations in other words were not attended by
the element of good faith which the curative statute
quoted above makes a condition precedent to the legiti-
mation of the offspring of ex-slaves.   [Livingston v.
Williams, 75 Tex. 653.]   The facts of the prior cere-
monial marriage between Smith and the woman Harriet,
and of cohabitation between the latter *quasi*-spouses con-
tinuously till Smith's death, negative conclusively the
existence of this necessary element of good faith in the
relations of Smith and Adeline, after the 15th day of
June, 1853.   If before that date Smith had been living
with the woman Adeline in good faith, the evidence
shows that when her master took her to Lincoln County
"he put her away," and married another woman.   The
first "marriage" was no bar to the second (Johnson

v. Johnson, 45 Mo. 595), and as hinted above, the fact that Adeline was alive when the second form of marriage took place, did not under our statute render the latter so far void as to make the offspring thereof illegitimate. If children born of the relations between Smith and Adeline subsequent to 1853, were legitimate, then the children born of the "marriage" with the woman Harriet are not legitimate. Choice must be made as between the two horns of the dilemma presented. So choosing, we do not think there was any substantial proof of cohabitation in good faith as man and wife between Smith and Adeline, after June 15, 1853. Inasmuch as plaintiff Albro was not born till 1855, the curative statute does not apply to him. There is substantial proof, however, that the plaintiff Eliza was born while Smith and the woman Adeline were living together in good faith as man and wife. While no one except the old negro Collins South testifies as to this, he is explicit. And while his story is in many respects incredible, its weight was for the trial court and not for us. The trial court found in favor of the legitimacy of plaintiff Eliza, and we have no power to disturb that finding, under the rule of verity which we have perforce attached to the finding of the trial court in a law case, when he sits as the trier of facts.

It results that the case must be reversed and remanded for a new trial in such wise as is consistent with what we have written herein. Let this be done. All concur.