## JOHN H. VETTE, Appellant, v. FRANK X. HACKMAN.

### Division Two, February 18, 1922.

1. **APPELLATE PRACTICE:** Appellant's Burden.  The burden is upon appellant to affirmatively show by the record that prejudicial error was committed by the trial court.

2. ————: Credibility of Witnesses.  The appellate court will not rule that appellant's uncorroborated testimony is to be accepted as true where it is flatly contradicted by the testimony of defendant who is positively corroborated by another, all being equally entitled to belief.

3. .EQUITABLE ESTOPPEL: Inconsistent Positions.  To plaintiff's legal action defendant may plead equitable estoppel, and if the facts show that plaintiff in a transaction connected with the basic matter of such action took a position wholly inconsistent with his representations and to the defendant's injury he should be denied recovery.

4. ————: Guaranteeing Secured Debt: Discouraging Bidders at Foreclosure Sale.  Where defendant in writing guaranteed the payment "of a $15,500 deed of trust, together with interest thereon," and plaintiff caused the deed of trust to be foreclosed, a plea by defendant that prior to the foreclosure plaintiff told him the mortgaged property was worth much more than the debt, that he would buy it in for the amount of the debt if no one else bid a larger sum, and that he need not concern himself about the sale,

Vette v. Hackman.

and said statements were made in the presence of another who was able and ready to bid $20,000 for the property, and that both, relying upon said representations, remained away from the sale, as a result of which plaintiff bought in the property, worth $25,000, for $10,000, is a good plea of equitable estoppel, and being supported by the evidence bars plaintiff's right to recover on said guaranty the difference between said $10,000 and the balance of the debt.

5. ———: ———: **Foreclosure Sale: Agreement to Suppress Bidding.** Whether a case comes within the general rule rendering void an agreement to suppress bidding and thus prevent fair competition at a public sale, depends upon its own facts. Where the mortgagee in a deed of trust represented to the guarantor of the mortgage debt that the mortgaged property to be sold was worth more than the debt (which was a fact) and that he would see that it sold for more than the debt, and thereby he induced the guarantor, and another who was willing and able to bid more than the debt, to remain away from the foreclosure sale, and he was enabled to buy in the property for considerably less than half its value and for only about half the debt, the representations in no sense savored of an agreement to stifle competitive bidding, but were an assurance by the mortgagee that he would not permit the property to be sold at a sacrifice, and while the mortgagee's conduct was fraudulent, that of the guarantor was not, and he is entitled to plead such assurance as an equitable estoppel to the mortgagee's suit on the guaranty for the difference between the debt and the amount at which the property sold. Being without fault, the rights of the guarantor will not be denied or curtailed because of the wrong of the mortgagee.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Alphonso Howe* and *Richard A. Jones* for appellant.

(1) The burden of proof was upon the defendant to establish by a preponderance of the evidence the facts necessary to his fourth defense. Tested by the conceded facts of record, the transaction sought to be established by the testimony of defendant is unbelievable. (2) The allegations made and evidence adduced on his

behalf in aid of the three other claims of defense pleaded by defendant substantially negative probability of the existence of the facts alleged in support of the fourth. (3) The transaction claimed was manifestly unlawful. Hurst Automatic Switch Co. v. Trust Co., 291 Mo. 54; Borth v. Proctor, 219 S. W. 72. (4) Defendant, his integrity of character for veracity impeached, exhibits another phase of delinquency, by seeking to join with him his office and business associates in an attempted self-stultification by claim of participation in an illegal transaction destructive of the integrity of a public sale. That the law will not presume any such transaction, will not determine it to exist until established by the clear preponderance of credible evidence, is settled, and it is equally well determined that the participant may not seek advantage from such conduct, or offer it or its consequence as a reason for release from his obligation.

*Seneca C. Taylor* and *Henry Higginbotham* for respondent.

(1) One who makes representations upon which he expects another to act and upon which such other relies and is induced to act, to his detriment, will be estopped to question the truth of what was represented to the other party to his injury. State Bank v. Frame, 112 Mo. 513; Moore v. Bank of Commerce, 52 Mo. 377; Delisi v. Ficarrotta, 135 N. Y. Supp. 653. (2) The purchaser, either at a judicial sale or one under a deed of trust, who is guilty of any fraud, trick or device, the object of which is to obtain the property at less than its value and succeeds in doing so, will not be permitted to enjoy the fruits of his purchase. Keiser v. Gammon, 95 Mo. 224; Stewart v. Nelson, 25 Mo. 309; Martin v. Blight's Heirs, 4 J. J. Marshall, 491; Neal v. Stone, 20 Mo. 296; Stine v. Wilkson, 10 Mo. 94; Somerville v. Hellman, 210 Mo. 575; Orr v. McKee, 134 Mo. 78; Clarkson v. Creely, 40 Mo. 114; Hall v. Cushman, 14 N. H. 171. (3) There was nothing illegal or against the policy of the law on

the part of defendant Hackman. Boyd v. Jones, 60 Mo. 454; Stewart v. Nelson, 25 Mo. 309; Stewart v. Severance, 43 Mo. 322; Lee v. Lee, 19 Mo. 420; Murphy v. DeFrance, 105 Mo. 53; Baier v. Berberich, 6 Mo. App. 537, 77 Mo. 413; Hopkins v. Ensign, 122 N. Y. 144; De-Baun v. Brand, 61 N. J. L. 624; Delisi v. Ficarrotta, 135 N. Y. Supp. 653; Barnes v. Morrison, 97 Va. 372; Lay v. Brown, 106 Ark. 1; Werner v. Denver Water Co., 40 Colo. 239; 2 Elliott on Contracts, sec. 761; 13 C. J. sec. 392, p. 451; 3 Am. & Eng. Ency. Law (2 Ed.) pp. 506-507.  (4)  The burden is upon the appellant to affirmatively show by the record that prejudicial error has been committed by the trial court. All presumptions are in favor of the correctness of the proceedings of that court, and if a record is susceptible of two interpretations, that will be given it which will sustain the judgment of the lower court. ˙ Where no error of law supervenes, all obscurities and ambiguities and all inferences which could be made from the evidence and about which reasonable minds might differ, are foreclosed by the finding and judgment of the trial court. St. Louis Ins. Co. v. Cohen, 9 Mo. 249; Riney v. Vanlandingham, 9 Mo. 475; Hattan v. St. Louis, 264 Mo. 646; Husted v. Ry. Co., 143 Mo. App. 626; Holloway v. Bradshaw, 223 S. W. 968; Brown v. Bland, 229 S. W. 448; King v. Railroad Co., 143 Mo. App. 279.  (5)  Presumptions between a wrongdoer and the person wronged should be made in favor of the latter. Costigan v. Mohawk & Hudson Railroad, 2 Denio, 206, 43 Am. Dec. 758; 10 R. C. L. p. 883, sec. 31.

WALKER, J.—This is an action at law brought in the Circuit Court of the City of St. Louis on a written guaranty made by the defendant to the plaintiff to secure the payment of a deed of trust. Upon a trial, a jury being waived, the court found in favor of the defendant, from which judgment this appeal has been perfected.

The guaranty in question was as follows:

"St. Louis, Mo., Sept. 19, 1909.

"Mr. J. H. Vette, City. Dear Sir: For value received, I hereby guarantee the payment of a $15,500 deed

of trust, 6%, executed by George Blockburger and wife to Samuel S. Snow, trustee, together with interest thereon, when the same becomes due, on property in City Blocks 2446 and 2447, City of St. Louis, Mo.

"F. X. Hackman."

The petition pleads the execution of the guaranty and the deed of trust therein mentioned; the making of the principal note for $15,500, due on or before two years, and four semi-annual interest notes for the sum of $465, each with eight per cent interest thereon from maturity, also secured by the deed of trust; the payment of three of said interest notes and a default in the payment of the fourth and the principal note; demand of payment and failure to pay; that the deed of trust was foreclosed according to law and the property sold at public sale on the 8th day of September, 1914, for the sum of $10,000; that after paying the charges of the trustee's sale and the last interest note, the trustee had in his hands a balance of $9,255.29, which was credited upon the principal note; that after crediting said note with all payments thereon, all of which is specifically pleaded, there remained due and unpaid on said principal note the sum of $9,891.45 with interest thereon from September 8, 1914; that plaintiff has made demand of the defendant for the payment of said sum, which has been refused; wherefore judgment is prayed for in the amount stated.

The answer was first a general denial.

Second, that in May, 1914, one Dunaway and wife, the then owners of the real estate described in the deed of trust, conveyed a portion of same to the plaintiff upon his agreement to accept and his acceptance of such conveyance in full payment and ratification of the notes secured by said deed of trust, and that thereby said note sued on was paid, settled and discharged.

Third, that in July, 1911, plaintiff, without the consent of the defendant, released three of the lots covered by said deed of trust and that by reason of said release, defendant's guaranty was so far altered that he was released from liability thereunder.

Fourth, that plaintiff delayed in making the foreclosure and sold the real estate at an inopportune time at the inadequate sum of $10,000; that if properly sold, the property would have brought an amount in excess of the amount due under the deed of trust; that having acquired the property under such circumstances, the plaintiff is more than repaid for the amount due on said notes and has lost nothing in having made the loan.

Fifth, that after the plaintiff began to advertise the land for sale under the deed of trust, the plaintiff met the defendant and told him that the real estate advertised was worth much more than the amount due the plaintiff on the notes secured by the deed of trust, and that he would buy in said property for the amount due upon the notes if no one else bid a larger sum, and that plaintiff told defendant that he need not concern himself about the sale of said property and that there would be no deficiency in the sale of same and that he would see that it brought the amount of the secured notes; that relying upon said assurance, defendant did not attend the sale and did not attempt to interest others in said property, so as to prevent the sacrifice of same. That thereby plaintiff so misled the defendant that plaintiff is estopped to claim that the price at which he purchased the property at said sale is the market value thereof; and is estopped to claim any sum or sums from defendant on account of the guaranty set forth in plaintiff's petition.

The reply pleads, first, the judgment of the Circuit Court of the City of St. Louis in Dunaway et al. v. Alewel et al., affirmed by the Supreme Court prior to the trial in the instant case and reported in 204 S. W. 726, as a former adjudication of the matters set up in the second defense in the answer; second, specific denials of the matters set up in the third subdivision of the answer; third, an admission that plaintiff did release the three lots mentioned in defendant's answer, subdivision 3, but that said release was made at the instance and request of and with the full knowledge and consent of the de-

fendant and that the consideration for said release was credited upon the mortgage note for the benefit of the defendant and with his knowledge; fourth, plaintiff denies each and every other allegation in said answer set forth and contained.

After the decision in Dunaway et al. v. Alewel et al., supra, the defense set up in subdivision two of the answer as above summarized and the first plea in the reply relating thereto were withdrawn and are, therefore, not for consideration. The execution of the guaranty under oath was admitted.

The trial resulted in a finding in favor of the plaintiff on all of the defenses pleaded in the answer except the fourth and fifth, which, save as to the alleged unreasonable delay pleaded in the fourth, were found in favor of the defendant, and a judgment rendered thereon.

The material portion of the fourth defense, omitting therefrom the allegation as to unreasonable delay in the foreclosure, is that the plaintiff in acquiring the property at the sale under the deed of trust was more than repaid for all moneys due upon the notes and that plaintiff has lost nothing by reason of the making of the loan.

The finding of the trial court in favor of the defendant's fifth defense is supplemented by the conclusion that in the purchase of the property at the foreclosure the plaintiff suffered no loss. It is evident therefore that the court's ruling in regard to the fourth defense is based upon the sustaining of the fifth.

Other than the correctness of the court's ruling in sustaining the fifth defense, we need not concern ourselves, all other matters being eliminated. This defense is set forth *in haec verba* in what is in other respects a summary of the pleadings.

It will profit nothing to set out the testimony in detail. To enable it to be satisfactorily determined whether there was substantial testimony to sustain the trial court's action in finding in favor of the defendant upon the fifth defense, it will suffice to say that however much each of the parties have sought to assail the credi-

bility of the testimony of the other, there is unimpeached testimony that by reason of the representations made by the plaintiff to the defendant, the latter was induced to stay away from the sale of the property and that such representations likewise tended to prevent a proposed bidder, who heard the conversation between plaintiff and defendant, from attending the sale and bidding on the property. It is also shown that this property was reasonably worth $25,000 and that this proposed bidder was able, ready and willing to purchase it at $20,000, and that it was his intention to attend the sale with that purpose in view had it not been for the assurances made by the plaintiff to the defendant in the witness's presence, that defendant need not attend the sale, that plaintiff would bid in the property or have it bid in and that he would save the defendant from loss. Plaintiff denies the facts as thus set forth, but his testimony lacks corroboration and is not in harmony with the other attendant facts and circumstances. Thus concluding, the trial court gave it no credence, but found in this regard in favor of the defendant. Its finding is couched in the following succinct words:

"That defendant knew of said sale under the deed of trust and was notified thereof by plaintiff's counsel. That three or four days before said sale the plaintiff, John H. Vette, came to defendant's office and told defendant Hackman that he need not be at the sale; that he, Vette, would see that there would be no deficiency on the note secured by deed of trust. That he had a man that would buy it and that defendant Hackman need not pay any attention to it and that defendant Hackman said, 'All right, John; I'll not be there then,' and did not go to the sale. That the property at that time was worth $25,000. That previous to this interview Sylvester I. Lewis was ready and willing and able to bid $20,000 for the property at the sale and that said Lewis did not go to the sale after he found out it was not going to be sold to an outsider.''

292 Mo.—10

I. It is scarcely necessary to. say that, under the facts here. in issue, the burden is upon the appellant to affirmatively show by the record that prejudicial error has been committed by the trial court; that all **Appellant's** presumptions are in favor of the correctness of **Burden.** its proceedings, and if the record is susceptible of two interpretations it will be given the one which will sustain the judgment rendered below; that in the absence of an error of law, obscurities and ambiguities, if any, and all inferences which could be made from the evidence and about which reasonable minds might differ are foreclosed by the finding and judgment of the trial court. We have so frequently ruled that the principles above stated will govern in a case of the character here under review that it is scarcely necessary to cite authorities in support of same. It cannot be questioned that where, as here, there was any substantial testimony to sustain the finding of the lower court that the same will not be disturbed upon an appeal.' [Hatton v. St. Louis, 264 Mo. 634; Woods v. Johnson, 264 Mo. l. c. 293; St. Louis v. Railroad, 272 Mo. 80; In re Lankford Estate, 272 Mo. 1; Wiley v. Harlow, 274 Mo. 170.]

II. To sustain the contention of the plaintiff as presented in his assignment of errors it will be necessary to give full credence to his uncorroborated testimony and to condemn as unworthy of belief the corroborated testimony of the defendant. Such **Credibility** a course would contravene a rule evolved **of Witnesses.** from centuries of experience in determining the weight of human testimony not only in judicial tribunals but in every relation in life. To illustrate, adversary parties contradict each other. The testimony of each may be equally entitled to belief so far as their general reputations for veracity are concerned; the one relies upon his own word to establish the truth of his utterances; the other is sustained by a third whose general reputation for veracity is unassailed and whose particular testimony is unimpeached. Under such circum-

stances, leaving out of consideration that salutary presumption in favor of the correctness of the rulings of trial courts, there is no room for controversy as to which one of the adversary parties the weight of the testimony should be awarded.

The probative force of the testimony being in favor of the defendant, it will suffice to say that the plaintiff's denial of his assurances made to the defendant whereby the latter was induced to remain away from the sale is not entitled to credence. Satisfied, therefore, not only from the weight of the testimony but from other attendant facts that the representations of the plaintiff were made, they cannot be otherwise construed than as an artifice adopted and employed to enable the plaintiff by subsequently repudiating them to obtain the property at less than its value and to leave a large balance due and unpaid on the note.

As a defense to this course of conduct on the part of plaintiff, the defendant pleaded an equitable estoppel. The essentials of this character of defense, expressed in terms applicable to the case at bar, are, first, representations by the plaintiff inconsistent with the claim afterwards asserted and sued on by him; second, acts of the defendant induced by such representations; and, third, injury resulting to the defendant from thus acting. Although estoppels are not favored, where, as here, a critical examination of the facts shows that the plaintiff in the purchase of the property took a position wholly inconsistent with his representations and to the defendant's detriment, no question should arise as to the propriety of the interposition of the character of the defense here made. [Commerce Tr. Co. v. Keck, 283 Mo. 209; Guy v. Woolridge, 226 S. W. (Mo.) 12; City of Hardin v. Cunningham, 285 Mo. 457, 226 S. W. 872; First National Bank v. Ragsdale, 171 Mo. l. c. 185; State Bank v. Frame, 112 Mo. l. c. 513.]

*Estoppel.*

III. The case of Dunaway v. Alewel, 204 S. W. (Mo.) 726, is attempted to be stressed as decisive of some

point in plaintiff's favor. The defendant was not a party to that suit. The only matter there adjudicated having reference to the case at bar was that the plaintiff, as the holder of the notes secured by the deed of trust, had not accepted a deed to a part of the property in payment of the debt evidenced by the notes. This payment was pleaded by defendant as one of the defenses in the instant case. When the opinion was delivered in the Dunaway Case, this defense was withdrawn. As to the matters ruled on in that case, the rights of the defendant in the case at bar, not having been derived from Dunaway, were not affected by that suit.

IV. The contest in the trial court was as to the facts upon which the defendant based the defense of estoppel. At no time did the plaintiff, either by his pleadings, objections or requested finding of facts, question the validity of any act of the defendant.
Suppressing Bidding. Here, however, it is contended by the plaintiff that the defense of estoppel cannot be sustained because the evidence offered in its support shows that the parties were in a conspiracy to chill a public sale. It is not to be contended that although the question of illegality was not raised in the trial court it may not be considered if urged in this court as a matter of law. Courts are instituted to vindicate and uphold the law, and if the proceedings therein are conducted in harmony with that purpose, no countenance will be given to any unlawful transaction.

Chilling a sale, generally speaking, is any combination or conspiracy among bidders or others to suppress fair competition at such sale for the purpose of acquiring the property at less than its fair value. Such agreements are held to be fraudulent and void on the ground of public policy. [16 R. C. L. p. 69, sec. 50, and notes.] Notwithstanding the unlimited application of this rule under the earlier cases, its extent as now applied is to embrace only cases of fraudulent acts and combinations having for their objects the stifling or suppression of fair competi-

tion for the purpose of enabling the parties to acquire the property for less than its fair value.

The character of the combination in each particular case is one of fact to be determined by the court upon the evidence before it. As was said by this court in the early case of Wooton v. Hinkle, 20 Mo. 290, l. c. 293: "A combination of interests to purchase property at a sheriff's sale will be valid or not, according to the views with which it is made. If it is affected with the design to depress the price, it will be void; but there may be circumstances which will render a combination at a sale lawful, where it is entered into with no improper view."

The Wooton Case recognizes the doctrine which had been theretofore announced by the Supreme Judicial Court of Massachusetts in Phippen v. Stickney, 3 Met. 384, l. c. 388, in which the doctrine was exhaustively considered as follows:

"The extent to which the doctrine of invalidating such contracts can be safely carried, would rather seem to embrace within the rule all cases of fraudulent acts, and all combinations having for their object to stifle fair competition at the biddings, with the design of becoming the purchasers at a price less than the fair value of the property. Beyond this, the application of the principle contended for may be found productive of mischief and an unwarrantable interference with the course of business at auction sales. We are therefore of opinion, that an agreement between A and B, that A will permit B to become the purchaser of certain property about to be offered at sale at public auction, and that A shall participate with B in the benefits of the purchase, will or will not be fraudulent, as the circumstances of the case show innocence of intention or a fraudulent purpose in making such agreement; that where such arrangement is made for the purpose and with a view of preventing fair competition, and by reason of want of bidders to depress the price of the article offered for sale below the fair market value, it will be illegal, and may be avoided as between the parties as a fraud upon the rights of the vendor. But,

on the other hand, if the arrangement is entered into for no such fraudulent purpose, but for the mutual convenience of the parties, as with a view of enabling them to become purchasers, each being desirous of purchasing a part of the property offered for sale, and not an entire lot, or induced by any other reasonable and honest purpose, such agreement will be valid and binding.

"In the case before us, upon the facts stated, we do not feel authorized to set aside this agreement as illegal or fraudulent, upon the principles we have stated. Fraud is not to be presumed where the contract is, on the face of it, consistent with honesty of purpose and fair dealing. If the defendant would avail himself of a defense of that character, it must be upon the finding of a jury, or upon a case stated by the parties clearly disclosing such fraudulent purpose. This contract might have been entered into by these parties for good and justifiable reasons; and it is not, therefore, to be deemed fraudulent and void upon the face of it."

Further recognizing this doctrine, we said in Stewart v. Severance, 43 Mo. 1. c. 334, that: "For the purpose of indemnity, and saving themselves harmless from liability, they had the unquestioned right to agree among themselves that they would bid an amount sufficient for that purpose; and if they were guilty of no improper conduct, or resorted to no trick or artifice calculated to depress the price or deter bidders, the sale should stand, notwithstanding it may have inured greatly to their benefit. To make the transaction fraudulent it should be shown that there was a conspiracy to depress the bidding."

The rule is thus epitomized and, we think, fairly stated in 3 Am. & Eng. Ency. Law, p. 506: "Sales which are affected by agreements not to bid are voidable or not, according to the object for which parties enter into the agreement.

"If the purpose is to chill the sale and purchase property for less than its market value, the vendor may avoid the sale.

"If, on the other hand, the agreement is made without any design to commit a fraud, but to enable the parties to the agreement to purchase conveniently, or if the agreement is for any honest purpose, the sale will be valid."

Corpus Juris thus elaborately states the rule: "Where the intention of the parties is fair and honest, and the primary purpose is not to suppress competition, but to protect their own rights, and there is no fraudulent purpose to defraud others interested in the result, the sale or agreement may be upheld." [13 C. J. sec. 392, p. 451.]

"Generally, it may be said that any act of the auctioneer, of the party selling, or of third parties as purchasers, which prevents a fair, free, and open sale, or which diminishes competition and stifles or chills the sale, is contrary to public policy and vitiates the sale." [6 C. J. sec. 31, p. 830.]

"Sales which are affected by combinations of interests or agreements not to bid are voidable or not, according to the object for which parties entered into the agreements. If the purpose is to chill the sale and purchase property for less than its market value, the seller may avoid the sale. If, on the other hand, the agreement is made without any design to commit a fraud, but to enable the parties to the agreement to purchase conveniently, or if the agreement is for any honest purpose, the sale will be valid." [6 C. J. sec. 32, p. 831.]

The reason and the spirit of the rule which renders an agreement or combination to suppress competition in bidding at a public sale, is well stated in DeBaun v. Brand, 61 N. J. L. 624, in which the Supreme Court of Judicature of New Jersey said:

"The class of sales to which the rule of public policy in question attaches includes execution sales and judicial sales generally, as well as tax sales and all others in which, in the administration of the law or of government, the property of a private owner is sold *in invitum*. In every sale of this sort there is a creditor and a debtor

element, each of which is deemed to be beneficially served by the rule of public policy under consideration. That the tendency of such a rule is to secure to the creditor class the satisfaction of its claims is obvious. To the debtor or owner it is but common fairness that the power that compels the sale of his property shall view with disfavor whatsoever tends to lessen normal competition. By the policy of the law the property is offered to the public; hence it is part of the same policy that the public shall, with respect to the sale, remain what the word implies, 'open,' free from bargains that contract it as a body of normal competitors. Of such a policy neither the public nor any individual can justly complain, since it affects no one in his rights or property, but merely prescribes how the rights and property of others shall be observed and protected.

"There is, however, a class of persons who cannot, within the spirit and reason of this rule, be regarded merely as part of the general public. Persons who, by virtue of lien or ownership, or otherwise, have an existing interest in the property to be sold, do not stand on the same footing as the general public. Incidental to their interest in the property is the right to employ all fair means for the protection of such interest, and to this end to make such honest bargains as their interests seem to require. It is no part of the public policy in question to rob one person of his rights in order to secure those of another. Upon the other hand, the mere possession of a right to protect one's own interests will not be permitted to cloak a violation of the rule under color of such right. Between these two exhibitions of the law lies its true application which, in the nature of things, must often turn upon a question of fact.

"The failure to recognize this distinction in most of the decided cases renders them of no value, and, even in the face of decisions to the contrary, we are, in this State, at liberty to adopt that rule which seems to be most consonant with justice and with the true purpose of the policy of the law, which is not that persons specially in-

terested are excepted, as a class, from the operation of the general rule that forbids bargains that restrict bidding, but that the general rule, when judged by its own spirit and reason, does not extend to the case of a party with an existing right to be protected at the sale whose agreement was for the protection of such right and not for the purpose of cheapening the sale. This I conceive to be the correct rule, even where the arrangement entered into for the protection of the right may incidentally lessen competition at the sale, or even if such be its inevitable result.''

Waiving the well defined and frequently approved rule that this court in the presence of any substantial testimony will not review the evidence in a law case, notwithstanding the allegation of fraud (Hurley v. Univ. Clay Co., 278 Mo. 1. c. 416; Holden v. Vaughan, 64 Mo. 588), let us look to the facts to determine if the instant case comes within the rule rendering void an agreement to forestall bidding and thus prevent fair competition at a public sale.

A combination within the inhibition of the rule requires concert of action by the parties in interest. That the plaintiff covertly by his representations made to the defendant, intended to stifle bidding at the sale and thus further his purpose to purchase the property at his own price, there can be no question. His representations to the defendant, however, were fair on their face and expressed a purpose directly to the contrary of that disclosed by his subsequent conduct. To plaintiff's expressed, and not to his covert, purpose was the defendant a party. The representations made by the plaintiff in no sense savored of an agreement to stifle competition, but, on the contrary, embodied an assurance by him that he would not permit the property to be sold at a sacrifice, leaving the defendant still burdened with an unsatisfied obligation.

Aside from that presumption as to the presence of an inclination to deal fairly, which usually characterizes human action, there was no selfish purpose to be sub-

served by the defendant entering into a combination whereby the sale of the land at a fair value would be prevented. On the contrary, it was to his interest that it be sold as the plaintiff assured him it would be, at an amount sufficient to satisfy the note in full. There is nothing here to show any wrongful intent on the part of the defendant. He had an interest to be protected by the sale and his agreement to remain away from it upon the plaintiff's assurance that he would thereby suffer no loss, is neither tinged or tinctured with any action which can be reasonably construed to affect the sale if the plaintiff had not belied his assurances. .

We rule, therefore, that the defendant is not to be denied the right to plead an estoppel under these facts. A finding to the contrary would be to hold that one is not entitled to employ all fair means to protect his interests. Plaintiff's conduct in this matter cannot be otherwise construed than as fraudulent; that of the defendant manifests no such feature. Until it becomes a part of the public policy to rob one person of his rights in order to secure those of another, we will not hold that an agreement fair in itself, but which is subsequently used by one of the parties thereto to perpetrate a fraud, will be held wholly void to the detriment of the other party. In short, the rights of one party, free from fault, will neither be curtailed nor denied by reason of the wrong of the other.

The contention, therefore, that there was such an unfair combination or agreement as to prevent the defendant from pleading same in defense of the plaintiff's action is without merit.

From all of which it follows that the judgment of the trial court is affirmed. It is so ordered. All concur.