THOMPSON et al. v. SCHENECTADY RY. CO. et al.

(Circuit Court, N. D. New York. July 16, 1903.)

1. FEDERAL COURTS—JURISDICTION—ANCILLARY SUIT.

A federal court has jurisdiction of a suit the purpose of which is to modify and correct one of its own decrees, without regard to the citizenship of the parties, and as incidental to such relief to grant an injunction to restrain a party from acting upon the decree as originally entered.

2. DEED—CONSTRUCTION—WARRANTY.

There is no implied warranty in a deed to real estate which renders the grantor a necessary party to a suit against the grantee affecting the title to a part of the property conveyed.

3. REAL PROPERTY—FRANCHISE—RIGHT OF WAY.

A franchise to operate a street railroad on a certain street is real estate, both at common law and by the statute of New York.

4. STREET RAILROADS—POWERS—ABANDONMENT OF LINE.

A grant to a street railroad company of the right to maintain a line of road on a certain street has no relation to its corporate franchise, and is not a franchise in such sense that it cannot be abandoned by the company by agreement with the property owners and the city without the consent of the state.

5. SAME—SUIT TO ENJOIN CONSTRUCTION OF LINE—PARTIES.

To a suit by property owners on a street to prevent the construction of a street railroad thereon, other property owners who consented to such building are not necessary parties.

In Equity.

Demurrer of Schenectady Railway Company and Central Trust Company to bill of complaint which seeks for relief the reviewing and revising of a decree of foreclosure heretofore made, so as to omit from the description of the property described therein Washington avenue, and decreeing that a certain agreement made by the receiver of the Schenectady Street Railway Company and the city of Schenectady and others be adjudged to have been assented and agreed to by all the property owners and bond owners of the Central

---

¶ 1. Supplementary and ancillary proceedings and relief in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

See Courts, vol. 13, Cent. Dig. § 801.

Trust Company, by the Schenectady Street Railway Company, by certain purchasers under the foreclosure sale in said foreclosure action, and by the Schenectady Street Railway Company, and that it be decreed that such agreement be approved by the court and binding upon all the parties and every one; also that the Schenectady Railway Company, its president, etc., be restrained from entering on any part of the above-mentioned portions of Washington avenue, and doing any act in the construction or in the operation of any sort of railroad upon, and from running any electric current through, any, wire over any part of the said premises, etc.

Edward Winslow Paige, for complainants.

Marcus T. Hun, for Schenectady Ry. Co.

Butler, Notman, Joline & Mynderse, for Central Trust Co.

RAY, District Judge. The bill of complaint in this action has been before this court on a motion to vacate an order of Justice Wallace granting leave to file same, and also to strike such bill of complaint from the files of the court. The case is reported in 119 Fed. 634, where the facts alleged are quite fully stated, and reference will be had thereto without fully restating them here.

It is well to say, however, in brief, that the complaint alleges that the complainants own and are in the possession of certain premises on Washington avenue, in the city of Schenectady; that about February 24, 1886, the Schenectady Street Railway Company was incorporated as a street surface railway company, and, having obtained certain consents of the property owners, constructed a horse railway on State street and on Washington avenue in front of the premises of the complainants, and that until July 2, 1891, it operated the said railway with horse cars in the summer and sleighs in the winter; that thereafter, having consents, it changed to an overhead trolley, and operated its road on Washington avenue very irregularly with electric cars in the summer, and sleighs in the winter, until it ceased the operation of its road. The complaint then alleges that on the 1st of September, 1891, the Schenectady Street Railway Company made a mortgage to the Central Trust Company of New York to secure certain bonds therein described, which was duly recorded, and which conveyed the railway franchises and other property of the defendant railway company, described in said mortgage, as follows (then follows a description of the property along which said railway ran, including Washington avenue); that about August 15, 1893, one Williams filed in this court, the Circuit Court of the Northern District of New York, a bill against the Schenectady Street Railway Company, which is·set out in full, in which action one John Muir was appointed receiver of said company, and entered into the possession of all the property of said Schenectady Street Railway Company. The complaint then alleges that October 10, 1893, the common council of the city of Schenectady took into consideration a petition for the abandonment of the said railway on Washington avenue, and thereupon the common council adopted a resolution that the running of cars over that portion of the said railway lying between the easterly side of Church street and Washington avenue, and on Washington avenue from its intersection with State street to the Mohawk river bridge, might be dispensed with until the 1st of June, 1894. The mayor of the city approved such resolution.

The running of the railroad on Washington avenue was then discontinued, and has never been resumed, except as hereinafter stated. December 14, 1893, the Central Trust Company filed in this court a bill of complaint against the Schenectady Street Railway Company for the foreclosure of the mortgage mentioned, and June 19, 1894, an order of this court was made appointing George W. Jones receiver of said company and of all its property and franchises. About September 1, 1894, a decree passed in that action. October 2, 1894, petitions were presented to the common council of the city of Schenectady by certain of the property owners on Washington avenue, and by George W. Jones as receiver of the Schenectady Street Railway Company, praying that the common council consent and authorize the said Street Railway Company to discontinue permanently the running of its cars on said portion of its road, and to remove and take up its track from Church street to the Mohawk Bridge, said company to remove its track at once, and relay the pavement as fast as the track was taken up. In said petitions it was expressly stated that it was understood and agreed that said action of the common council and of the Street Railway Company was not to affect in any way or prejudice in any way the franchise or any of the rights of said Street Railway Company, except as to the running of its cars from Church street down to the Mohawk Bridge. Thereupon the common council of the city of Schenectady adopted a resolution authorizing the railway company to dispense permanently with the operation of its road between Church street and the Mohawk Bridge on condition that the track on said portion of said streets be promptly removed; that the pavement on said portion of Washington avenue be restored; and that the said receiver reimburse the contractor now repaving the said portion of said street for any extra expense for labor and material incurred by said contractor by reason of the removal of said track; in all other respects the license of the Schenectady Street Railway Company to be and remain unchanged, in full force and effect. That resolution was approved by the mayor of said city. The track on said Washington avenue and on the block of State street between Washington avenue and Church street was then directly taken up, and the pavements on both said streets restored, and it is alleged that this was done by said Jones as such receiver, and that there has been no railroad or track there since, except as stated. January 12, 1895, the special master in said foreclosure action reported that he had made a sale in said foreclosure action to Kobbe, White, and Batchellor. A decree was passed in the Williams action, and it therein appeared that Cravath & Houston represented all the bonds secured by said mortgage, and also said Jones as receiver. February 8, 1895, the court directed the carrying out of the sale made to Kobbe, White, and Batchellor, and pursuant thereto deeds were given to the purchasers by the special master, by Jones as receiver, and the Schenectady Street Railway Company, containing a description of the property as contained in the mortgage. It is also alleged that said Jones, receiver, turned over the control and management of all the mortgaged property to the defendant the Schenectady Railway Company February 17, 1895, and that since that date the said property has been possessed, controlled, and managed by this last-

named company, and it is also alleged that it appeared from the record that Cravath & Houston were counsel for the Schenectady Railway Company. The bill of complaint further alleges that the Schenectady Railway Company and its officers then knew of the hereinbefore mentioned agreement between Jones, as receiver, the property owners on Washington avenue, and the city of Schenectady that the road be abandoned on Washington avenue. The bill of complaint alleges also that April 4, 1902, the Schenectady Railway Company began to tear up Washington avenue and lay a railroad upon it, etc., and that the Schenectady Railway Company was organized by the purchasers of said property, Kobbe, White, and Batchellor, under the aforesaid sale and the laws of the state of New York pertaining thereto. In short, the bill of complaint alleges that with the consent and knowledge of the bondholders and holder of the mortgage and said receiver, and of the property owners on Washington avenue and the city of Schenectady, it was agreed, for a valuable consideration, that the operation of the Street Railway Company on Washington avenue at the places mentioned should be permanently discontinued, and that this agreement was executed and the road actually abandoned before the confirmation of said foreclosure, and that the purchasers under the sale had full knowledge of such abandonment and consented thereto, and that the present railway company, defendant, knew of such abandonment and agreement, and that, while in terms the road on said Washington avenue was foreclosed and conveyed under said decree in said foreclosure action, in truth and fact the abandonment ought to have been set up in that action and that portion of the road excepted from the sale and from the description in the decree.

The demurrer of the Schenectady Railway Company alleges that this court has no jurisdiction of the matters contained in the bill of complaint; that there is a defect of parties before the court to maintain this bill, as none of the parties to the original suit or decree are made parties herein; and that Kobbe, White, and Batchellor are necessary parties, they having purchased under said decree and sold to the present railway company. The Central Trust Company has been made a party. The demurrer also contends that the other owners of property on Washington avenue who signed the consents to the operation of the road on Washington avenue should be made parties. The demurrer also alleges and claims that the state of New York ought to be a party, and that this bill of complaint cannot be sustained, and does not state a cause of action, for the reason that the franchise of said company on Washington avenue granted by the state could not be abandoned without the consent of the state.

It seems clear to this court that it has jurisdiction of the matters contained in the bill. The foreclosure was had in this court, and the property was sold under and pursuant to a decree of this court. One contention is that too much was included in that decree of sale or in the description of property contained therein, and the main purpose is to correct that decree by this action by striking out the description of property, etc., so far as it relates to the property on Washington avenue. Clearly, no other court has jurisdiction by supplemental bill or original bill, or supplemental bill in the nature of a bill of review,

or any bill whatever, or by motion to correct the decree of this court. Other courts perhaps may restrain the construction of a railway under the alleged charter of the original company, but, as incident to the main relief sought in this action, it would seem clear that this court also has power to grant the relief and injunction asked. The parties being before the court upon the main issue, and all interests represented, this court must have power, as an incident of the action and to make its judgment effectual, to grant the injunction, if a case therefor is made out. The ground of demurrer that there is a defect of parties is untenable.

The facts so far as applicable are as follows: The Schenectady Street Railway Company became insolvent in 1893, and thereafter a receiver, one John Muir, was appointed by a federal court. Later an action of foreclosure was brought by the Central Trust Company in behalf of the bondholders, and by virtue of a decree of the federal court all the property, including in terms "all the franchises" (Demurrer Book, report of George W. Jones, Receiver, fols. 288, 289), was sold to three persons, Kobbe, White, and Batchellor, who in turn sold to defendant the Schenectady Railway Company. They in fact organized this company. One Jones was receiver in this action. While still such receiver, and during the pendency of the foreclosure, upon a petition of the owners of the abutting property on Washington avenue (plaintiffs or plaintiffs' predecessors in title in this suit), and with the consent of the common council of the city of Schenectady, a part of the tracks on Washington avenue were abandoned, and the company, or receiver, took up the rails and replaced the pavement as agreed.

Defendants contend that Kobbe, White, and Batchellor are parties in interest who must be joined in this equitable action. They argue that if it be decided that the right to run over the portion of Washington avenue in dispute be held to have been abandoned, according to complainants' contention, these vendors will become liable to respond in damages to their vendee, and therefore are necessary parties. Unfortunately for this contention, nothing appears to show by what sort of conveyance Kobbe, White, and Batchellor sold to the Schenectady Railway Company. It is elementary that a demurrer lies only as to facts appearing on the face of the pleading, and there are no implied covenants of title in a deed of real estate. "In the conveyance of real estate, if no covenants are expressed in the deed, there is not * * * a warranty of title. If the deed contains no covenant, the purchaser is wholly without remedy." 3 Washburn, R. P. p. 447, c. 5, § 5, note 1. "A covenant is not implied in a conveyance of real property, whether the conveyance contains any special covenant or not." 5 N. Y. Rev. St. p. 3579, "Real Property Law," § 216.

Now, this transfer from Kobbe, White, and Batchellor was one of real property; for a franchise, both at common law and by New York statute, is real estate, being classified as an incorporeal hereditament. 2 Wash. R. P. c. 1, p. 291, § 2, note 1, et seq.; 3 Kent's Com. (12th Ed.) p. 458; Laws N. Y. 1899, p. 1589, c. 712.

So, also, the right of way over the property of abutting street owners is an easement, and thus real estate. Citations supra. The court can-

not assume that the vendors gave a full covenant or warranty deed. Indeed, if there be any presumption, it is that they granted no more than they had a right to convey; for there is never an implication that an act is unlawful or ultra vires. It would be preposterous for the court, having before it the simple fact that a conveyance of realty had been made, to read into it a covenant of title. In its absence, how can Kobbe, White, and Batchellor possibly be interested in the outcome of the suit? In the absence of a covenant of title, it must be assumed for the purposes of this demurrer that they sold only such title as they themselves had, and therefore could not be made liable in any event.

The point that the right to run over a portion of Washington avenue could not be abandoned without the consent of the state is not well taken.

Counsel have fallen into error as to the meaning of the word "franchise." It may be true that a corporation cannot abandon its franchise—cannot commit suicide—without the consent of its creator, the state. But "franchise," i. e., the right to exist and perform certain acts, is a thing distinct from the property rights which the corporation when created may acquire from individuals. Assume this case: A corporation is chartered to construct and operate a railway between the cities of A. and B. That charter is its franchise, and, having been created, the railway company proceeds to acquire by purchase, or by exercise of the right of eminent domain, rights of way over the lands of individuals, one of whom is John Doe, located between A. and B. The company lays tracks and operates its trains over Doe's land for several years, and then decides to change the location of its tracks for a mile or two for the purpose of reducing grade. It takes up its tracks from Doe's land, uses it for no purpose, and in fact specifically notifies him that it has abandoned its right of way, and such abandonment is mutually agreed upon for a good consideration. Will it for a moment be contended that this proceeding is void because it involves the abandonment of a "franchise," and that, therefore, the state must be a party? Or, after the lapse of years, could the railway again lay rails over Doe's land, ousting him from the user, without again purchasing or acquiring by condemnation the right of way, upon the cynical plea that the "abandonment" was void for lack of consent by the state? If so, then no railroad company could take up a yard of its tracks, or change the location of the smallest of its buildings, without the consent of the state. But to state the proposition is to reduce the argument to an absurdity. In this case the property owners who granted rights of way by consents which were subsequently mutually abandoned are seeking to have such abandonment adhered to.

The "franchise," the charter granted by the state, is one thing; the property rights, including rights of way which the chartered body may acquire from private individuals, is quite another. These latter may be lost by acts of the corporation, and the approval of the state is not necessary.

There is no reason why the property owners who consented to the construction of the road on Washington avenue, and who do not complain of the action of the present company in constructing a road there,

should be made parties. If they acquiesce in such action, the company will not be molested by them. If they do not let them bring their action or join in this, they cannot consent for these plaintiffs who seek to protect their own rights and enforce the agreement of abandonment made by the parties named and approved by the city. It would be as reasonable to contend that all the inhabitants of the city should be parties.

It seems clear to this court that, assuming all the facts alleged in the complaint to be true, a cause of action is stated, and that the complainants are entitled substantially to the relief demanded, and that with the new parties brought in all necessary parties are now before the court.

The demurrer must be overruled, with costs.   So ordered.