In the Matter of the Estate of SOPHIE FRANZ: THE STATE, Appellant.
—127 S. W. (2d) 401.

Division Two, April 20, 1939.

512

*Roy McKittrick,* Attorney General, and *Edward H. Miller,* Assistant Attorney General, for appellant.

*E. J. Doerner* and *Jesse T. Friday* for Johanna F. Fiske, Amanda F. Wheeler, Henrietta A. Holdoway, Adelaide F. Zimmermann and Otto B. Franz.

*Buder & Buder* for Sherman H. Kleinschmidt, Helen Kleinschmidt and G. A. Franz.

TIPTON, J.—In the Probate Court of the City of St. Louis, the State of Missouri filed exceptions to the report of the appraiser of the estate of Sophie Franz, deceased, appointed under the inheritance tax laws of the State. The basis of these exceptions were that the appraiser failed to include in his report 188, 333 1/3 shares of stock of the Burroughs Adding Machine Company which the State claimed were owned by Sophie Franz at the time of her death. The State's exceptions were overruled in the Probate Court. On an appeal to the Circuit Court, the exceptions were again overruled and judgment entered accordingly. The State has duly appealed to this court.

On February 11, 1898, Ehrhardt D. Franz, a resident of St. Louis, Missouri, died. By his will he gave all his property, real and personal, to his wife, Sophie Franz, for life, with the remainder over to his ten children in equal shares. Included in the personal property of his estate were 210 shares of stock of the American Arithmometer Company. Shortly after his death, this company declared a one hundred per cent stock dividend. In the year 1905 the assets of this company were taken over by the Burroughs Adding Machine Company, and the Burroughs Company issued to Sophie Franz 4,200 of its shares in payment of the original shares held by her in the old company. The Burroughs Company declared various stock dividends and rights to purchase stock to its stockholders so that at the time of the death of Sophie Franz on April 14, 1930, the shares of stock of the Franz estate had increased to 282,500. Several of the children of Ehrhardt D. Franz and wife, Sophie Franz, died prior to their mother's death.

It is the contention of the State that six and two-thirds interests of the remaindermen under the will of Ehrhardt D. Franz had transferred their interest in their father's estate to their mother, Sophie

Franz, during her lifetime, and that under the will of their mother they now own the 188,333 1/3 shares in question and are, therefore, subject to the State inheritance tax.

The reason that the State does not contend that the remaining three and one-third interests of the remaindermen of Ehrhardt D. Franz owe an inheritance tax is on account of a decree of the United States District Court for the Eastern District of Missouri where the judgment of that court held that the three and one-third interests had not transferred their interests to their mother. The style of that case is Franz v. Buder, which, in its various phases, reached the United States Circuit Court of Appeals twelve times, and the Supreme Court of the United States twice. [These cases are as follows: Franz v. Buder, 11 Fed. (2d) 854, 858; Franz v. Franz, 15 Fed. (2d) 797; Buder v. Franz, 27 Fed. (2d) 101; Franz v. Buder, 34 Fed. (2d) 353; Id., 38 Fed. (2d) 605; Mississippi Valley Trust Co. v. Buder, 47 Fed. (2d) 507; Mississippi Valley Trust Co. v. Franz, 51 Fed. (2d) 1047; Fiske v. State of Missouri, 62 Fed. (2d) 150; Wallace v. Franz, 66 Fed. (2d) 457; Id., 68 Fed. (2d) 313; Fiske v. State of Missouri, 69 Fed. (2d) 683; Wallace v. Fiske, 80 Fed. (2d) 897; Buder v. Franz, 273 U. S. 756, 47 Sup. Ct. 459, 71 L. Ed. 876; and State of Missouri v. Fiske, 290 U. S. 18, 54 Sup. Ct. 18, 78 L. Ed. 145.]

In 1905 there was organized under the laws of Missouri a corporation known as the E. D. Franz Estate. To this corporation Sophie Franz conveyed both the real and personal property left her by the will of her husband and also all the property she owned in her own right. The ten children conveyed their interests which they had in the real estate derived from their father. Each child received twenty-five shares of stock in the corporation and the mother received two hundred and fifty shares of stock.

On January 30, 1909, Sophie Franz, by trust agreement, transferred certain stocks, including the Burroughs Company stock, and other property and securities to G. A. Buder and G. A. Franz, her son, as trustees, to hold the same during her lifetime. These trustees were empowered to collect the income and profits from the trust property. Out of such income and profits they were directed to pay Sophie Franz $4,000 per annum, and to pay to each of her nine surviving children and the guardian of the child of a deceased daughter $2,500 per annum.

Shortly after the trust estate was created, Ehrhardt W. Franz filed an action to set aside the trust estate created by his mother. However, in the year 1910 the Circuit Court of the City of St. Louis entered a decree sustaining the validity of the trust agreement. It also held that Sophie Franz held a life estate under the will of Ehrhardt D. Franz and that each child that survived him had a one-tenth vested remainder in that estate.

In 1913 a supplemental trust agreement was prepared and executed for the purpose of increasing distributions provided in the original

agreement so that Sophie Franz would receive $8,000 annually and the ten remainder interests would each receive $5,000 per annum.

In 1920 the Burroughs Adding Machine Company issued to its stockholders the right to subscribe to shares of its capital stock. At that time this court had not decided whether stock dividends were income and belonged to the life tenant or whether they were part of the corpus of the estate and belonged to the remaindermen. It was therefore necessary for the life tenant and the remainder interests to execute receipts which would protect the Burroughs Company for these additional shares of stock issued.

In 1924 Ehrhardt W. Franz filed in the U. S. District Court for Missouri an action in equity for an accounting against Buder as trustee, and after several appeals to the Circuit Court of Appeals, that court entered a judgment for an accounting and held that the three and one-third remainder interests had not transferred their interests to their mother, Sophie Franz. The answer of the defendant Buder, among other things, alleged that the three and one-third interests were estopped to assail the trust agreement and were bound by the receipt of payment thereunder; that they were estopped because of the agreements of January 7 and January 30, 1920, in reference to the stock rights issued by the Burroughs Company; and that the parties seeking relief had "no interest remainder or otherwise, under the will of Ehrhardt D. Franz" because of certain advancements and payments in excess of the value of their shares in the estate of Ehrhardt D. Franz, deceased. In that case, the six and two-thirds interests filed an answer adopting the answer of the defendant Buder. The decree in that case, among other things, determined that the increase of Burroughs Company stock belonged to the corpus of the residuary estate of Ehrhardt D. Franz, deceased; that the plaintiff had one-tenth vested right, as remainderman under the will (the complaining defendants having similar rights); that such remainderman would be entitled to possession thereof upon the death of Sophie Franz, the life tenant; and that the trustee should file an accounting and give a bond of $500,000 within 30 days.

For the purpose of this opinion, it will not be necessary to give a history of the various Federal Court decisions except to say that the six and two-thirds remainder interests claim that their interests were necessarily determined to be the same as the three and one-third interests by the Federal Court judgment. [See the Federal Circuit Court opinions above cited.] And they have claimed that right since the judgment was entered in that case.

This case was tried without the aid of a jury. The trial court found that the stock in question was not a part of the estate of Sophie Franz and, therefore, was not subject to the State inheritance tax.

Under this condition of the record, only the documentary evidence in this case is for our review for the reason that the burden of

proof was on the State. Since the trial court found the issue for the respondents (defendants), it is not necessary that the oral evidence be sufficient to support the findings of the trial court. It was privileged to believe or reject, in whole or in part, the oral testimony of any witness, even though uncontradicted and unimpeached. [Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621.] In a jury waived law action, the weight of the oral evidence and the finding thereon is peculiarly the province of the trial court as the trier of the fact. [Ferguson v. Long, 341 Mo. 182, 107 S. W. (2d) 7.]

▮ It is the contention of the State (1) that the respondents did in fact release or convey away their remainder interests in their father's estate to their mother during her lifetime, either by the way of a gift or for a valuable consideration, and (2) that even if respondents did not release or convey away their remainder interests, they are now estopped to say in this proceeding that they did not so convey them.

We cannot pass upon any transaction prior to 1909 between the life tenant and the remaindermen because of the Circuit Court judgment entered in 1910. In that case, Ehrhardt W. Franz was plaintiff, and the trustees, the life tenant, and all remaindermen were parties to that action. The Court upheld the trust agreement of 1909 and found that each of the children of Ehrhardt D. Franz had one-tenth vested remainder in his estate, subject to the life estate of Sophie Franz.

The State in its brief states that it "has not committed itself to the position that the conveyance by the six and two-thirds interests were gifts to the life tenant on the one hand, or on the other hand were conveyed for consideration, valuable or good. It makes no difference to the State's case which of these views is adopted."

▮ A delivery to the donee or to someone for him during the lifetime of the donor is necessary to the validity of a gift *causa mortis* as well as a gift *inter vivos*. There are exceptions to this rule, as where the donee already has possession of the property. [28 C. J. 689.] If the six and two-thirds interests gave the property in question to Sophie Franz, a delivery was not necessary because she, being the life tenant, was entitled to possession. But "such transactions must be established by clear and convincing testimony," and, further, "the general rule requiring gifts *inter vivos* to be established by conclusive evidence is especially applicable, where such gift is not asserted until after the death of the alleged donor, and gifts thus preferred after death of the alleged donor are regarded with suspicion by the court." [Cremer v. May, 8 S. W. (2d) 110, l. c. 115. See, also, Jones v. Falls, 101 Mo. App. 536, 73 S. W. 903; Hunter v. Wabash Ry. Co., 149 Mo. App. 243, 130 S. W. 103; 28 C. J. 676.] Of course, if there was a consideration for the alleged transfer of stock from the remaindermen to the life tenant, no delivery would be

necessary; nor would any particular formalities for such a conveyance be necessary, since the necessity of seals on contracts or conveyances is no longer required. [Sec. 2957, R. S. 1929.]

During oral argument of this case in this court, the attorney for the State stated that his client would not say at what time or by what instrument the transfer (either by gift or for a consideration) took place except to say it was sometime between the time of the death of Ehrhardt D. Franz in 1898 and the time of the death of his widow, Sophie Franz, in 1930.

We will proceed to examine the documentary evidence subsequent to the Circuit Court decree of 1910.

The supplemental trust agreement of 1913 had as its object increasing the annual payment of Sophie Franz from $4,000 to $8,000, and the yearly payments of the remaindermen from $2,500 to $5,000. As did the trust agreement of 1909, it provided that such payments were to be made only out of the income, rents and earnings of the estate, which, of course, belonged to the life tenant. As we see this supplemental agreement, it was a gift by the life tenant to the remaindermen of income due her. In other words, the income from the trust estate belonged to the mother. She had a right to give her property to her children and grandchild if she saw fit to do so without affecting their rights as remaindermen. The remaindermen did sign this supplemental trust agreement, but this was done solely to protect the trustees. We fail to see any transfer by this instrument from the remaindermen to the life tenant.

In 1918 Sophie Franz executed an indemnity agreement with the trustees. By this agreement, she expressed a desire to aid her children and her grandchild. She authorized the trustees to lend each heir the sum of $25,000 as an advancement which "shall be charged against the respective interests of said beneficiaries, legatees and distributees under my last will . . . and deducted from their respective interest in my estate." This could not be considered as a transfer of any interests the remaindermen had in the estate of Ehrhardt D. Franz, even though they did accept the $25,000 mentioned in the agreement.

In 1920 the Burroughs Company gave to each stockholder the right to purchase additional stock. It had not been determined at that time in this State whether stock dividends belonged to the life tenant or the remaindermen. In 1927, we decided the case of Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S. W. 91, wherein we held that stock dividends belonged to the remaindermen. In January, 1920, certain agreements were entered into between the trustees, the remaindermen, Sophie Franz and the Burroughs Company so that additional stock might be purchased. In the case of Buder v. Franz, 27 Fed. (2d) 101, l. c. 113, these agreements are set out in detail, and are briefly summarized as follows:

"The bare bones of this agreement are that these stock 'rights' attached to stock 'appearing in the name of Sophie Franz' which stock was subject to the trust agreement; that the trust agreement provided no method by which such 'rights' could be taken therefromunder; that the trust estate lacked available funds to realize upon these 'rights;' that the life tenant and all of the remaindermen wished distribution of such 'rights' among the remaindermen in order that they might realize thereon; that some of such remaindermen were minors; that to secure this desired result and to protect the trustees in executing it, an agreement was advisable; that such distribution of the 'rights' was authorized and such protecting indemnity contracted."

We think that court correctly held that these "rights" constituted part of the corpus of the estate belonging to the remaindermen, that the only interest the life tenant had therein was to the income from the stock purchased under such rights, if such purchase was by funds from the corpus of the trust, and that the life tenant and her trustees could not appropriate these rights through exercise thereof with the life tenant's money.

These agreements were only for the protection of the Burroughs Company and they could not be tortured into a release of the remaindermen's interests, either by gift or for a consideration.

■ The State stresses the answer filed in the Federal District Court in the case of Ehrhardt W. Franz, v. Buder, supra. That case was filed in 1924 and these respondents' answer alleged that the three and one-third interests were estopped to claim any interest in the remainder estate because of the agreements made January 7 and January 30, 1920, and that the three and one-third interests seeking relief had "no interest, remainder or otherwise, under the will of . . . Ehrhardt D. Franz" because of certain advancements and payments in excess of the value of their shares in the estate of Ehrhardt D. Franz.

There are several reasons why such an answer could not be considered a transfer of the six and two-thirds interests; however, it seems to us the fact that the six and two-thirds interests did not allege in the answer that they had no interest as remaindermen is sufficient. All that the respondents alleged in their answer in that case was that the three and one-third interests did not have any interest in the estate of Ehrhardt D. Franz, deceased, which we think is far short of being a conveyance of their remainder interests to their mother.

There are some unsigned instruments in the record which we do not deem necessary to discuss, but we have come to the conclusion that the respondents did not convey their interests in this estate to their mother, either by gift or for a consideration.

■ As previously stated, the State contends that even if the respondents "did not release or convey their remainder interests, they cannot be heard to say in this proceeding that they did not so convey

them.'' The State bases its contention, first, on the doctrine of estoppel, and second, on the doctrine of election.

To constitute estoppel *in pais,* three things must occur; First, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement or act; and, third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement or act. [McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S. W. 506; Vette v. Hackman, 292 Mo. 138, 237 S. W. 802.]

In 21 Corpus Juris, section 233, page 1229, the author says:

''In order to work an estoppel the position assumed in the former trial must have been successfully maintained. In proceedings terminating in a judgment, the positions must be clearly inconsistent, the parties must be the same, and the same questions must be involved. So the party claiming the estoppel must have been misled, and have changed his position; and an estoppel is not raised by conduct of one party to a suit unless, by reason thereof, the other party has been so placed as to make it unjust to him to allow the first party to change his position. There can be no estoppel where both parties are equally in position of all the facts pertaining to the matter relied on as an estoppel; where the conduct relied on to create the estoppel was caused by the act of the party claiming the estoppel; or where the positions taken involve solely a question of law. And in no event can estoppel be extended beyond the natural and reasonable import of the acts or conduct relied on to create the estoppel. It has been held that what a defendant may do in a criminal court cannot be pleaded as an estoppel against him in a civil action; but there is authority to the contrary. The general rule may apply, although the position assumed in the first instance was erroneous. A party cannot deny the validity of steps taken by him in another proceeding which would impute to him fraud upon administration of justice in such other proceeding.''

The doctrine of election of remedies can only properly be invoked where an election has been made as between inconsistent remedies. After it has been made, the party invoking election as a defense need not show he will suffer disadvantage if his adversary is not required to stand by his election, but may profit by his election. [U. S. Fidelity & Guaranty Co. v. Fidelity Nat. Bank & Trust Co., 109 S. W. (2d) 47.].

From what we have already said, it follows that no estoppel could arise from the supplemental trust agreement of 1913 or the indemnity agreement of 1918.

The State contends that on account of the agreements of January 7 and January 30, 1920, in reference to the ''rights'' to purchase additional stock of the Burroughs Company, the respond-

ents are estopped from claiming that they did not transfer their interests in the Ehrhardt D. Franz estate to Sophie Franz.

This identical question was passed on by the Eighth Circuit Court of Appeals in Buder v. Franz, 27 Fed. (2d) 101, l. c. 113, wherein that court said:

"These 'rights' were not income belonging to the life tenant but corpus belonging to the remaindermen. [Miles v. Safe Deposit & Trust Co., 259 U. S. 247, 42 Sup. Ct. 483, 66 L. Ed. 923; Hite's Devisees v. Hite's Executor, 93 Ky. 237, 267, 20 S. W. 778, 19 L. R. A. 173, 40 Am. St. Rep. 189.] The only interest therein, if any, of the life tenant was to the income from the stock purchased under those rights, if such purchase were by funds from the corpus of the trust. The life tenant nor the trustees had·any right to appropriate these 'rights' and make them the property of the life tenant through exercise of such 'rights' with her own money. The only substantial thing acquired by the remaindermen through this contract was the protection of and realization upon their own property—the 'rights.' For such a consideration we are asked to determine that they gave up all rights and claims to any other property in the trust estate. That is, for the immediate privilege of exercising the right to subscribe $100 per share for 6,300 new shares in the Burroughs Company they gave up all claim to 12,000 outstanding fully paid shares in that company and rights in other property as well. We must decline to travel such an uninviting course.

"It is contended, also, that an agreement (dated January 30, 1920), by all parties to the above agreement, made to the Burroughs Adding Machine Company to induce it to comply with the agreement of January 7, 1920, and to indemnify it for so doing, contains language upon which an estoppel should arise. The language relied upon is used for and in connection with Sophie Franz and not by these remaindermen. It is that 'the said Sophie Franz, individually and for herself, her heirs and assigns, hereby agrees' that the rights and stock distributed under the agreement of January 7, 1920, 'may be treated as a partial distribution of her estate under the terms of her last will and testament. . . .' In crushing contrast, is the undertaking of the remaindermen to waive all rights to such 'rights' or resulting stock 'whether acquired under the last will and·testament of E. D. Franz, deceased, or in any manner.'

"It is urged, also, as bearing on this contention that one of the trustees, G. A. Buder, testified that the payment to the trustees of 5 per cent of the stock 'rights,' provided for in the agreement of January 7, 1920, 'was done on the assumption that this was all property of Sophie Franz which was distributed . . . and not the property of E. D. Franz estate.' We think the agreement of January 7, 1920, must govern and not the 'assumption' as to its meaning and effect indulged by one of the parties seeking to establish the estoppel.''

We think the reasons assigned in that case are correct and we overrule the State's contention on that point.

We have already set out the substance of the answer filed in the Federal Court in which the State claims that the respondents have made an election and that they are now estopped to claim that they own any interest as remaindermen in the Ehrhardt D. Franz estate. As previously stated, that answer only denied that the claimants in that case did not have any interests as remaindermen; at least, it does not directly say that these respondents no longer have any interests as remaindermen.

From the views that we have already expressed, it will be unnecessary for us to pass on the respondents' contention that their rights in the estate of Ehrhardt D. Franz, deceased, have been adjudicated.

The State contends that the court erred in permitting the respondents to introduce evidence of G. A. Buder, G. A. Franz and Sherman H. Kleinschmidt because of the death of Sophie Franz. In the State's case in chief, it introduced their testimony given in the Federal Court case. Assuming that they were disqualified under Section 1723, Revised Statutes 1929, the State waived such disqualification by first introducing their testimony in the Federal Court. [Lampe v. Franklin American Trust Co., 339 Mo. 361, 96 S. W. (2d) 710.]

For the same reason, the State contends that error was committed when the trial court permitted Mrs. Wheeler, Mrs. Fiske, Mrs. Holdoway, Mrs. Zimmerman and Otto B. Franz to testify. The witnesses did not testify as to transactions they had had with Sophie Franz; they testified only as to their representation by the law firm of Buder and Buder, and the extent of the power and authority conferred by them upon that firm. Therefore, the objection to these witnesses should be overruled.

From what we have said, it follows that the judgment of the trial court should be affirmed. It is so ordered. All concur.