**FISKE et al. v. BUDER et al.**

No. 12013.

Circuit Court of Appeals, Eighth Circuit.

Feb. 16, 1942.

Rehearing Denied March 13, 1942.

Jesse T. Friday, of St. Louis, Mo. (E. J. Doerner, of Tulsa, Okl., on the brief), for appellants.

G. A. Buder, Jr., of St. Louis, Mo. (Oscar E. Buder, of St. Louis, Mo., on the brief), for appellees.

Before THOMAS and JOHNSEN, Circuit Judges, and REEVES, District Judge.

THOMAS, Circuit Judge.

In 1898, Ehrhardt D. Franz of Saint Louis, Missouri, died testate, leaving an estate consisting of stocks, bonds and real estate. By the terms of his will his widow, Sophie Franz, was given a life interest in the estate with remainder over in equal shares to his ten children.

In 1909 the surviving widow created a trust, the res of which consisted of all the property owned by her in her own right and also as life tenant under the will of her deceased husband. The appellee, G. A. Buder, and G. A. Franz, now deceased, one of the sons of Ehrhardt D. Franz and Sophie Franz, were named as trustees in the instrument creating the trust. A clause of the

instrument also provided that the law firm of Buder and Buder consisting of G. A. Buder, a trustee, and his brother, Oscar E. Buder, should be employed by the trustees as their counsel.

About 1924 dissension arose between the trustees and the owners of 6⅔ shares of the remainder estate on one side and the owners of 3⅓ shares on the other. The dissension resulted in litigation which has been carried on in the courts of Missouri and the Federal courts ever since. The facts necessary to a complete understanding of this controversy will be found in the reported decisions of the Supreme Court of Missouri, of the Supreme Court of the United States, and of this court.[1]

Sophie Franz died in 1930, and her life estate was thereby terminated. The trustees under the trust agreement of 1909 claimed as compensation for their services a commission of five per cent estimated not only upon that part of the trust res which had been owned by Sophie Franz in her own right, but also upon the remainder interests of her deceased husband's estate. The owners of 3⅓ of the remainder interests objected to the allowance against their property but the owners of the 6⅔ interests, then also represented by Buder and Buder, consented to the allowance. On April 1, 1932, an order was entered in the district court denying the commission upon the 3⅓ shares of the objecting remaindermen but providing "that the said Trustees be allowed a credit for a commission of five per cent upon the value of the remaining 6⅔ shares of the corpus of the estate in their possession."

In 1939 the five appellants, who are among the owners of the 6⅔ shares, moved the court to modify the order of April 1, 1932, "so as to vacate * * * that portion * * * which allows the claim of the trustees to a 5 per cent commission upon" the appellants' remainder interests. The trustees filed an answer to the motion, and after a full hearing at which evidence was offered and received an order was entered on December 17, 1940, over-

ruling the motion. The appeal is from this order.

The trust estate was brought under the jurisdiction of the district court in 1924 in the case of E. W. Franz v. G. A. Buder, et al., a case in which jurisdiction is based upon diversity of citizenship. See Franz v. Franz, 8 Cir., 15 F.2d 797. That case is still pending for the purpose at least of administering and closing the trust. In all the proceedings and litigation growing out of the trust the law firm of Buder and Buder represented the trustees and from 1926 until 1935 that firm also represented the appellants. On May 17, 1930, the appellants with the assistance of Buder and Buder, their attorneys, filed a Petition for Distribution of Remainder Interests in which it was stated that they were informed that the trustees under the conveyance of January 30, 1909, had filed, or would file, their petition asking for instructions as to making a distribution of the remainder estate. Among other recitations of the petition it was said: "And your petitioners inform the Court that they have agreed with divers other remaindermen that the said Trustees shall be allowed five per cent (5%) on the Trust Estate as compensation for their services as such trustees, and your petitioners consent to and hereby request that such allowance be made and that the Trustees be permitted to deduct and retain such five per cent (5%) out of their remainder interests aforesaid."

The report of the trustees was filed about a year later, and in it they claimed a credit for a five per cent commission on the remainder estate.

The grounds of the motion to modify the order of April 1, 1932, by vacating the allowance of a commission to the trustees based upon the remainder interests were: (a) That Buder and Buder, while acting as appellants' attorneys, for the purpose of enhancing the trustees' commissions had by fraudulent representations, upon which they relied, procured appellants to sign the Petition for Distribution of May 17, 1930, consenting to the allowance of such com-

[1] Franz v. Buder, 8 Cir., 11 F.2d 854; Franz v. Franz, 8 Cir., 15 F.2d 797; Buder v. Franz, 8 Cir., 27 F.2d 101; Franz v. Buder, 8 Cir., 34 F.2d 353; Franz v. Buder, 8 Cir., 38 F.2d 605; Mississippi Valley Trust Co. v. Buder, 8 Cir., 47 F.2d 507; Mississippi Valley Trust Co. v. Franz, 8 Cir., 51 F.2d 1047; Fiske v. State of Missouri, 8 Cir., 62 F.2d 150; Wallace v. Franz, 8 Cir., 66 F.2d 457; Wallace v. Franz, 8 Cir., 68 F.2d 313; Fiske v. State of Missouri, 8 Cir., 69 F.2d 683; Wallace v. Fiske, 8 Cir., 80 F.2d 897, 107 A.L.R. 726; Fiske v. Wallace, 8 Cir., 117 F.2d 149; In re Franz' Estate, 344 Mo. 510, 127 S.W.2d 401; State of Missouri v. Fiske, 290 U. S. 18, 54 S.Ct. 18, 78 L.Ed. 145.

mission, and (b) that as a result of the fraud complained of the appellants were deprived of their day in court to contest the allowance of said commission.

The fraudulent representations alleged to have been made were (1) that the trustees were entitled to a five per cent commission based upon the value of the interests of the several remaindermen; (2) that the remaindermen were legally obligated to pay such commission; and (3) that (a) unless appellants followed their advice and agreed to pay the commission the distribution of their remainder interests would be indefinitely postponed, and (b) that upon application of the trustees the court would allow a commission upon the remainder interests in excess of five per cent.

In their answer to the motion appellees admit the historical background alleged in the motion and as defenses plead (1) that the motion is a collateral attack upon the order; (2) that at various times prior to the death of the life tenant appellants had agreed that the trustees should be given a five per cent commission upon their remainder interests; (3) deny the alleged fraudulent representations; and (4) allege laches.

The questions presented upon this appeal for determination are: (1) Does the district court have power to grant the relief asked in appellants' motion? (2) If so, are the appellants guilty of laches so as to deprive them of the right to relief? And (3) if not guilty of laches, are they entitled to relief on the merits?

1. *The Power of the District Court.*— After appellants had filed their motion to modify the order of April 1, 1932, appellees moved to dismiss and strike it on the ground that the court was without jurisdiction over the subject matter of appellants' motion. Appellees' motion was overruled by the court, and no cross appeal has been taken. The only question which can be raised on this appeal, therefore, is the power of the district court to act in the premises. It is the contention of appellees that the relief asked by appellants' motion is barred by Rule 60(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The motion was not filed within six months after the order sought to be modified was entered. Rule 60(b) provides: "On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him

through his mistake, inadvertence, surprise, or excusable neglect. The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding, or (2) to set aside within one year, as provided in Section 57 of the Judicial Code, U.S.C., Title 28, § 118, a judgment obtained against a defendant not actually personally notified."

It is argued that this proceeding does not come within the first saving clause of the rule which provides that the rule "does not limit the power of a court (1) to entertain an action to relieve a party from a judgment, order, or proceeding * * *" for the reason that this clause applies only to original "actions", and that appellants' motion is not such an action. It is conceded by appellants, as it must be, that the motion to modify is in the nature of an ancillary proceeding. Simkins: Federal Practice, § 812; Thompson v. Schenectady Ry. Co., C.C.N.Y., 124 F. 274, 277, 278; Wallace v. Fiske, 8 Cir., 80 F.2d 897, 901, 902, 107 A.L.R. 726; St. Louis-San Francisco R. Co. v. Byrnes, 8 Cir., 24 F.2d 66; Dickey v. Turner, 6 Cir., 49 F.2d 998; 1 Moore's Federal Practice, pp. 462, 465, 466. In this situation the effect and proper construction of Rule 60(b) must be determined. Here the case in which the motion was made is still pending, and the order sought to be modified relates to the administration of a fund in the custody of the court. The question is, does the court in the administration of justice have power under the circumstances to hear and determine the issue presented by the motion and the answer; or more than six months having elapsed after the order was entered before the motion was filed, does Rule 60(b) deprive the court of such power?

Rule 60(b) is based upon § 473 of the Code of Civil Procedure of California, and the question arises whether we should follow the construction placed upon it by the Supreme Court of that state. The general rule is that when a statute is adopted from another jurisdiction, in substantially the same language, the provisions so adopted are to be construed in the sense in which they were understood at the time in the jurisdiction from which they were taken.

Metropolitan Railroad Co. v. Moore, 121 U.S. 558, 572, 7 S.Ct. 1334, 30 L.Ed. 1022; United States v. Lecato, 2 Cir., 29 F.2d 694, 695. This is not in conflict with the rule that new legislation must be construed and applied consistently with the construction placed upon the related parts of the general law. United States ex rel. Demarois v. Farrell, 8 Cir., 87 F.2d 957, 962, 963; United States v. Jefferson Electric Co., 291 U.S. 386, 396, 54 S.Ct. 443, 446, 78 L.Ed. 859. And the latter rule does not impair the application of the first to the construction of Rule 60(b). 18 Hughes, Federal Practice, Rules Civil Procedure, p. 445, § 25631 et seq.

The Supreme Court of California has several times had occasion to construe § 473 of the California Code of Civil Procedure in cases where it was sought to vacate a judgment or decree after the period limited by the statute had expired. In Chiarodit v. Chiarodit, 218 Cal. 147, 21 P.2d 562, 564, the court said: "We now turn to consider whether the notice to set aside and vacate the decree was timely given. The notice was served before the expiration of six months but the time set for making the motion fell beyond the limit of section 473 of the Code of Civil Procedure. Those authorities which hold that the motion must actually be made within the period are beside the point in the present case for the reason that here the fraud established by the showing of the respondent was extrinsic. (McGuinness v. Superior Court [196 Cal. 222, 237 P. 42, 40 A.L.R. 1110], supra; Tomb v. Tomb, 120 Cal.App. 438, 7 P.2d 1104), and it has been determined that where it is of that character, the court has the inherent power to set aside the decree regardless of the limitations prescribed by section 473. McGuinness v. Superior Court, supra; Aldrich v. Aldrich, 203 Cal. 433, 264 P. 754; McKeever v. Superior Court, 85 Cal.App. 381, 259 P. 373; Tomb v. Tomb, supra."

Applying the construction thus placed upon the California statute to Rule 60(b), the district court had power to decide the issue presented by the motion and answer provided the fraudulent representations alleged constitute extrinsic fraud. That question may be discussed more appropriately hereinafter in connection with our decision on the merits of the controversy. Our conclusion there is that the alleged fraud is extrinsic or collateral. We hold, therefore, that the district court had power to hear and determine the issues. See, also, Preveden v. Hahn, D.C.S.D.N.Y., 36 F.Supp. 952, 953.

2. *Laches.*—The contention that appellants' right to relief is barred by laches, although serious, should not be sustained.

By far the greater part of the property subject to the life estate of Sophie Franz and transferred by her to the trustees consisted of stock dividends issued by corporations. In the early history of the trust it was contended by the trustees that such stock dividends were income belonging to the life tenant and consequently a part of the trust fund subject to a commission to the trustees. It was further contended that the remainder interests had been cancelled by advancements made by the life tenant to the remaindermen. Another claim was that the appellants had by valid contract as early as 1909 agreed to pay the trustees a five per cent commission upon their remainder interests. Practically all of these matters were adjudicated by this court in Buder et al. v. Franz et al., 8 Cir., 27 F.2d 101, decided in 1928. It was there held that stock dividends on stock held in a trust estate are part of the corpus of the estate and not income. It was also held that the remaindermen under the Franz will were not estopped to assert their interest in the securities held by the trustees. The state of Missouri, however, claimed that these stock dividends had by gift or otherwise been surrendered by the remaindermen and belonged to the life tenant. Had this contention been sustained the value of such stock dividends would have been subject to the inheritance tax of the state of Missouri. They would also have been a part of the trust res and liable to the trustees' commission, because the trust agreement was a Missouri contract and subject to Missouri law. State of Missouri v. Fiske, 290 U.S. 18, 23, 54 S.Ct. 18, 78 L.Ed. 145. In Re Franz' Estate, 344 Mo. 510, 127 S.W.2d 401, decided March 15, 1939, rehearing denied April 20, 1939, the Supreme Court of Missouri decided these contentions against the state and the trustees.

This ancillary proceeding was filed by the appellants on May 12, 1939, within two months after the decision of the Supreme Court of Missouri in the Franz' Estate case supra. It was, in view of these circumstances, seasonably filed. It is true that it might have been filed more than six years earlier, but the appellants until that time had no conclusive reason for not believing

the representations of Buder and Buder, and for believing that their interests would not be held to belong to their mother's estate and to be a part of the trust estate. There could be no distribution of the estate until after the decision of the Supreme Court of Missouri in the Franz' Estate case supra. See State of Missouri v. Fiske, supra.

In the case of Wallace v. Fiske, supra, this court, at page 912 of 80 F.2d, 107 A.L. R. 726, said:

" 'Laches does not, like limitation, grow out of the mere passage of time. But it is founded upon the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties.' Galliher v. Cadwell, 145 U.S. 368, 12 S.Ct. 873, 36 L.Ed. 738. 'The length of time during which the party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them.' Alsop v. Riker, 155 U.S. 448, 461, 15 S.Ct. 162, 167, 39 L.Ed. 218.

" 'The chancellor will determine the extraordinary case in accordance with the equities which condition it. Kelley v. Boettcher, [8 Cir.], 85 F. 55.

" 'Laches which will bar a suit in equity depends on the peculiar circumstances of each case, and where the complainant's inaction does not appear to have worked injury to any one, and it is not shown that there was any occasion for more promptly asserting his rights, the defense will not prevail.' Hanchett v. Blair [9 Cir.], 100 F. 817."

■ Since, as shown supra, no distribution of the property was possible while the litigation was pending in the Missouri courts, the parties could not be injured by the delay. It is argued by appellees that certain rights of Honorable James A. Reed had intervened during the delay and that he will be injured by a reversal of the order appealed from. The order of April 1, 1932, directed the trustees to pay Reed $14,000 out of the commissions paid to them. It does not appear that the commissions pay-

able to the trustees in any event will not be sufficient to pay this sum. Further, this allowance was made pursuant to a request of the trustees contained in their report. Reed was not a party to the suit, and he was given no judgment against the appellants.

■ Appellees assert further that they are prejudiced because of the death of G. A. Franz on July 30, 1939, prior to the trial of this case. His testimony, they assert, would have been important in reference to a certain resolution adopted by the parties at Las Vegas, New Mexico, in May, 1909. But the minutes of that meeting were introduced in evidence; and other witnesses were present at that and all other meetings material to the issues, and testified at the hearing. It does not appear that appellees are in any way prejudiced by the death of Franz. The appellants should not be barred by laches.

3. *The Merits.*—The merits of the controversy depend (1) upon the establishment of the alleged fraudulent representations of Buder and Buder inducing appellants to sign the Petition for Distribution on May 16, 1930; that such fraud prevented appellants from excepting to and defending against the allowance of the claimed commission; and (2) that such fraud, if established, was in its nature extrinsic rather than intrinsic.

■ It is the law that fraud must be proved by clear and convincing evidence. Continental Nat. Bank v. Holland Banking Co., 8 Cir., 66 F.2d 823, 830. It must appear also that the fraud was practiced in the very act of procuring the judgment or order sought to be vacated or modified and that it was extrinsic or collateral as distinguished from intrinsic fraud. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Phoenix Finance Corporation v. Iowa-Wisconsin Bridge Co., 8 Cir., 115 F.2d 1 (reversed on other grounds by the Supreme Court in Phoenix Finance Corporation v. Iowa-Wisconsin Bridge Co., 62 S.Ct. 139, 86 L.Ed. ——).

■ The evidence upon this question is conflicting. The appellants without dispute, following the death of the life tenant on April 14, 1930, met at the Chase Hotel in Saint Louis on May 16, 1930, for the purpose of consulting their attorneys, Buder and Buder, and to procure a prompt distribution of their remainder interests in their deceased father's estate. Some of

them consulted G. A. Buder at his law office in the city the preceding day. Oscar E. Buder met with them at the hotel in both a forenoon and an afternoon session.

At the hearing the appellants testified unequivocally that the alleged representations were on the occasions mentioned made by both the Buders, and both the Buders unequivocally denied having made the statements attributed to them. Both parties claim that their testimony is corroborated by many pertinent facts.

It is the claim of appellees that it was the expressed wish of the life tenant that the trustees should be paid a commission of five per cent estimated upon the value of both the life and remainder estates; that her wish was communicated to the appellants and the appellants consented to the carrying out of her wishes.

It is next claimed that in May, 1909, within four months after the execution of the trust agreement of January 30, 1909, and twenty-one years prior to the execution of the Petition for Distribution, a family conference was held at Las Vegas, New Mexico, at which all the members of the family were present except Mrs. Zimmermann and E. W. Franz; and that at that conference a valid contract was entered into fixing the compensation of the trustees at five per cent of the entire property in the trustees' hands.

As showing adherence to the alleged agreement of May, 1909, the appellees refer to an agreement made in 1920, by the terms of which the remaindermen paid the trustees a five per cent commission on the distribution of 12,600 rights to subscribe to stock of the Burroughs Adding Machine Company.

Again, in November, 1929, at a family gathering called by the life tenant an instrument was prepared by Buder and Buder for the purpose of distributing a portion of the trust estate. That instrument, signed by the appellants, contained a provision that the trustees should receive a five per cent commission upon all the property distributed. That agreement did not become effective because E. W. Franz refused to sign it.

Finally, the Petition of May 17, 1930, the execution of which appellants claim was obtained by fraudulent representations of Buder and Buder, contained a provision that the trustees should retain a commission of five per cent of the market value of the stock distributed for their services in handling the assets of the trust.

Further, the appellees say the evidence of fraud is not clear and convincing but vague and indefinite because the testimony of appellants as to attendant circumstances is not clear and because their positive and direct testimony is denied by both the Buders.

The appellants contend, first, that there is no basis in either law or equity for the allowance of a commission to the trustees appointed by the life tenant payable out of the remainder estates. A life tenant is a quasi trustee for the remaindermen and liable for waste. It was so held by this court in Buder v. Franz, 8 Cir., 27 F.2d 101, 114. In the opinion of Judge Faris in connection with the order of April 1, 1932, he declared that remaindermen are not liable to burdens placed upon their remainder interests by the life tenant and that counsel for the trustees concede the bare bones of the law to be according to the contentions of the 3⅓ excepting interests on this point, and that the trustees relied only upon a species of estoppel resting partly upon the former recognition of the trust and partly upon the request of practically all of the beneficiaries. The trustees' charges are lawfully deductible only from the income of the life tenant as a part of the expenses of the trust created by her. Missouri Central Building & Loan Ass'n v. Eveler, 237 Mo. 679, 141 S.W. 877. Their charges are not deductible from the remainder estate because they did not "create, enhance, preserve, or protect" that estate. Abbott, Puller & Myers v. Peyser, Receiver, App.D.C., 124 F.2d 524, 525, decided December 31, 1941.

Second, Buder and Buder, as counsel for the trustees and for more than nine years attorneys for these appellants, consistently claimed and advised that the trustees were entitled to a five per cent commission upon the remainder estates. They consistently endeavored by the instruments which they drew for appellants' signatures to extinguish the remainder interests and to merge them with the life estate; and that appellants' signatures were obtained to these various instruments because of their confidence in Buder and Buder and their reliance upon the advice and counsel so given them. The evidence supports these contentions of appellants. G. A. Buder admits their truth. That is the position taken by Buder and Buder in the litigation in

both the federal and the state courts. Their explanation of this conduct is that it was a mistake of law, and that the law of Missouri was not settled with respect to the question of whether a stock dividend is income or corpus during that period. That question was settled, however, by the Supreme Court of Missouri in 1927 by its decision in the case of Hayes v. St. Louis Union Trust Co., 317 Mo. 1028, 298 S.W. 91, 99, 56 A.L.R. 1276. In that case the question was whether stock dividends on stock held in trust constituted income or whether they were a part of the corpus. The court held "that the stock dividends were not income of the trust estate but an accretion to the corpus * * *." After that decision was rendered there was no excuse for a Missouri lawyer to maintain or advise to the contrary.

The other contentions of Buder and Buder as to the validity of contracts prior to May 17, 1930, and as to the effect to be given the conduct of the appellants is answered by the decision of this court in Buder v. Franz, 8 Cir., 27 F.2d 101, 115. In our opinion in that case, Judge Stone, speaking for the court, said: "It is clear, from this record, that this entire controversy has been caused by the trustees. They have consistently and persistently refused to accord the cross-appellants the rights which were due them. They have gone further than this and have and do deny the existence of any and all rights and interest in the cross-appellants. Such course of conduct has compelled this litigation to establish those interests and to enforce and protect the resulting rights." In that case the appellant and cross-appellants were the owners of 3⅓ remainder interests, but the same conduct of the trustees applied with equal or greater force to these appellants because at that time they were subject to the influence of Buder and Buder as their attorneys.

The course of conduct of the trustees condemned by the court in the last cited case, as shown by this record, did not end with the decision of that case. Acting through their counsel, Buder and Buder, they continued in the determination to secure a five per cent commission on the remainder estates. The procuring of the signatures of the appellants to the Petition for Distribution of May 17, 1930, was but a part of that continued purpose. When the record is studied as a whole this fact is established by evidence so clear and convincing that it cannot be doubted. As late as 1931 the trustees filed a claim in the probate court of Saint Louis against the estate of Sophie Franz, deceased, for a five per cent commission upon both the life estate and the remainder interests as constituting the trust fund in the amount of $810,001.22 as compensation for their services, alleging that all parties in interest had acquiesced in and consented to the charge. That the appellants trusted and relied upon Buder and Buder in signing the Petition is shown by appellants' entire course of conduct during the period of their employment of Buder and Buder from 1926 until 1935.

The conclusion is also irresistible that appellants did not except to the trustees' report nor make any defense to the claim of the trustees for credit for a commission upon the remainder interests for the same reason that they signed the Petition for Distribution containing a consent to the allowance of such credit. At that time the life tenant was dead and they were anxious to come into the possession of their remainder interests. They believed that the way to accomplish that desire was to follow the advice of their counsel. To do so involved a failure to file exceptions and contest the allowance which upon the representations and advice of their counsel they had requested the court to make. It is undisputed that Buder and Buder did not tell their clients, the appellants, that they had a right to contest the claimed commissions, nor that the law did not support the contention that the trustees were entitled to such a commission.

█ Another matter of concern to the court is the undisputed fact that the fiduciary duty of G. A. Buder as attorney for the appellants was in direct conflict with his interest as a trustee claiming a commission upon their property to which under the law he was not entitled. Such a position is not tenable. It has always been condemned by courts. The relation obviously inspires confidence in the client, and a mere breach of fidelity to the client's interest is constructive fraud and gives the client a right to redress. Jones v. Byrne, C.C.Ark., 149 F. 457, 464; Baker v. Humphrey, 101 U.S. 494, 495, 25 L.Ed. 1065; Parkerson v. Borst, 5 Cir., 264 F. 761; In re Conrad, 340 Mo. 582, 105 S.W.2d 1. In the litigation pending in the courts from 1926 to 1935 G. A. Buder occupied a fiduciary relation of several angles. He was one of the trustees of the trust estate of Sophie Franz by rea-

son of which the trustees had possession of the remainder interests under the will of Ehrhardt D. Franz. He had been attorney for the testator. He was Sophie Franz' attorney. He and his brother were attorneys for the trustees and they were also attorneys for the appellant remaindermen.

Turning to the question of the nature of the fraud complained of as a ground for relief, it is the rule that fraud is extrinsic or collateral within the meaning of the rule when its effect is to prevent an unsuccessful party from having a trial or from fully presenting his case, as, for instance, when his attorney fraudulently connives at his defeat or sells out his client's interest. Montgomery v. Gilbert, 9 Cir., 77 F.2d 39, 45. It is always extrinsic fraud for an attorney to fail fully to disclose to his client all material facts in any transaction in which their interests are adversary and when such fraud results in a failure of the client to defend against the claim of his attorney. Hockenberry v. Cooper County State Bank, 338 Mo. 31, 88 S.W.2d 1031, 1036. Fraud which prevents a person from presenting an available defense is proper ground for relief against a judgment. Footnote 12, 31 Am.Jr., § 654, p. 232. If the fraud really prevents the complaining party from making a full and fair defense it will justify setting aside a decree, whether extrinsic or intrinsic. Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 421, 43 S.Ct. 458, 67 L.Ed. 719. In the present instance the conduct and fraudulent advice and representations of Buder and Buder had the direct effect of preventing the appellants from presenting an available defense to the claims of the trustees for a commission based upon the value of the appellants' remainder estates. For that reason the allowance of the credit claimed in the trustees' report and granted in the order of April 1, 1932, should be vacated and set aside. The motion should not be denied because of lapse of time under the circumstances of this case since this is purely an ancillary proceeding, since the fund being administered is under the control of the court and undistributed, and since the parties cannot be prejudiced by such an act of justice. In such a case technical considerations should be accorded little weight, unless their effect is to deprive the court of power to act.

The order appealed from is reversed with directions to enter an order sustaining appellants' motion.